Willie Frank Campbell v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-233-CR

Â Â Â Â Â WILLIE FRANK CAMPBELL,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 2000-956-C
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

DISSENTING OPINION TO DENIAL OF MOTION FOR REHEARING
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Failure to Request a Response
Â Â Â Â Â Â I have long been opposed to any effort to re-write, modify, or respond to arguments made in
a motion for rehearing without requesting a response, even if we are reaching the same result. 
See T. C. & C. Real Estate Holding, Inc. v. Sherrod, No. 10-00-002-CV (Tex. App.âWaco
November 14, 2001)(Gray, J., dissenting)(not designated for publication); In the Interest of
J.F.C., 57 S.W.3d 66, 76 (Tex. App.âWaco 2001)(Gray, J., dissenting), revâd, 96 S.W.3d 256
(Tex. 2002). Thus, before my colleague offers an opinion on the issues raised in the Stateâs
motion for rehearing, I would have requested a response to help us focus the issues. Of course,
I would also request the response because I continue to believe we erred in the original analysis
and because a response is necessary before we can grant a motion for rehearing. See Tex. R. App.
P. 49.2.
Direct Evidence of Threat
Â Â Â Â Â Â The concurring opinion twice states there is no direct evidence of a threat. This is critical to
the determination made therein that resisting arrest is a rational alternative to aggravated assault. 
I believe the assertion that âthere is no direct evidence of a threatâ ignores the evidence in the case
and is against common sense.
Â Â Â Â Â Â Picture the facts: A uniformed police officer is in a foot chase in pursuit of a suspect he has
identified as wanted on outstanding warrants. The officer overtakes and bear-hugs the suspect in
an effort to subdue him. Suddenly, a gun appears in the suspectâs hand. No rational person would
conclude from these facts that this alone is not a threat directed to the police officer.
Â Â Â Â Â Â To be a threat, the gun does not have to be pointed at the officer. To be a threat, no words
need be spoken. To be a threat, we do not need to know what action the officer takes. In
summary: pursuit + gun = threat.
Â Â Â Â Â Â Add to these facts, the testimony that at the time the gun appeared in the suspectâs hand, he
said âget back.â Not only is this additional direct evidence of a threat, but it is also evidence of
a direct threat. While the evidence of the direct threat was disputed because Campbell testified
he never made the statement, there is a substantial difference between disputed evidence of a direct
threat and no evidence of a threat. My esteemed colleague has failed to recognize this distinction
in the concurring opinion.
Need for Clarification
Â Â Â Â Â Â If time permitted, I would have used this case for a comprehensive review and analysis of the
cases involving lesser included instructions. In Texas, this line of cases goes back to at least 1952
(Daywood v. State, 248 S.W.2d 479, 157 Tex. Crim. 266 (Tex. Crim. App. 1952)), but really
proliferated after approximately 1975. See Day v. State, 532 S.W.2d 302 (Tex. Crim. App.
1975).
Â Â Â Â Â Â Since then, there have been many cases in this area that contribute to the growing body of case
law.


 The holding and result in many of these cases are difficult to reconcile. I feel the time is
ripe to prepare a comprehensive review of the cases and align their holdings, if they can be, and
explain away and forever discard those that can be fairly characterized as aberrations to an overall
comprehensive analysis of this area of law.
Â Â Â Â Â Â But time does not permit me this luxury, so I must leave that task for another court on another
day. Until then, substantial judicial resources will continue to be consumed making these detailed,
fact specific reviews.
Â Â Â Â Â Â This could, however, be largely avoided if practitioners would simply trust juries to follow
their oath that a conviction of the offense requires the State to prove its case beyond a reasonable
doubt on the charged offense. But then it is the courts that created this rule requiring the
submission of the lesser included offense because we were fearful that juries would not follow
their oath â and that always leads to trouble. We brought it upon ourselves.
Conclusion
Â Â Â Â Â Â I would request a response to the Stateâs motion for rehearing with an eye toward granting it.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Dissenting opinion issued and filed January 14, 2004
Publish



>   Non-exclusive factors which may be considered
in determining lost earning capacity include Âevidence of past earnings; the
plaintiffÂs stamina, efficiency, and ability to work with pain; the weaknesses
and degenerative changes that will naturally result from the plaintiffÂs
injury; and the plaintiffÂs work-life expectancy.ÂÂ  Tagle, 155 S.W.3d at
519; Plainview Motels, 127 S.W.3d at 36; accord Koko Motel, 91
S.W.3d at 52.Â  However, each case must be determined according to its
particular facts and circumstances.Â  See McIver, 169 S.W.2d at 712; Clayton,
190 S.W.3d at 698; Koko Motel, 91 S.W.3d at 51.

Â Â Â Â Â Â Â Â Â  ÂWhere plaintiff is a child, who has
never earned any money, the jury must determine the value of its lost earning
capacity altogether from their common knowledge and sense of justice.ÂÂ  McIver,
169 S.W.2d at 712; PilgrimÂs Pride Corp. v. Smoak, 134 S.W.3d 880, 903
(Tex. App.ÂTexarkana 2004, pet. denied); accord Strauss v. Continental
Airlines, Inc., 67 S.W.3d 428, 436 (Tex. App.ÂHouston [14th Dist.] 2002, no
pet.); Pipgras v. Hart, 832 S.W.2d 360, 366 (Tex. App.ÂFort Worth 1992,
writ denied); C.T.W. v. B.C.G., 809 S.W.2d 788, 794 (Tex. App.ÂBeaumont
1991, no writ).

Â Â Â Â Â Â Â Â Â  Disfigurement is Âthat which impairs
or injures the beauty, symmetry, or appearance of a person or thing; that which
renders unsightly, misshapen or imperfect, or deforms in some manner.ÂÂ  Goldman
v. Torres, 161 Tex. 437, 341 S.W.2d 154, 160 (1960); accord Doctor v.
Pardue, 186 S.W.3d 4, 18 (Tex. App.ÂHouston [1st Dist.] 2005, pet. filed); SunBridge
Healthcare Corp. v. Penny, 160 S.W.3d 230, 252 (Tex. App.ÂTexarkana 2005,
no pet.); Schindler Elevator Corp. v. Anderson, 78 S.W.3d 392, 413 (Tex.
App.ÂHouston [14th Dist.] 2001, pet. granted, judgmÂt vacated w.r.m.).

Michael Beettner

Â Â Â Â Â Â Â Â Â  Durham contends that the record
contains no evidence that Michael Beettner suffered past or future physical
impairment or lost earning capacity.

Â Â Â Â Â Â Â Â Â  Beettner testified that the accident
caused him to suffer torn fibers on the lateral side of his left kneecap.Â 
Medical records admitted in evidence support this diagnosis.Â  Immediately after
the accident, his knee Âhurt bad,Â and he experienced pain when walking.Â  A
knee brace provided by the hospital helped with the pain by preventing him from
fully extending his leg.Â  Beettner experienced this pain and discomfort for Âabout
a month to a month and a half.ÂÂ  After that, he experienced Âvery slight pain.Â

Â Â Â Â Â Â Â Â Â  Nevertheless, Beettner was still
experiencing problems with his knee at the time of trial, five and one-half
years after the accident.Â  Beettner testified that

[a]bout every month, two to three times a month
it will catch, the kneecap part will catch and pop.Â  And at first, for about
five minutes, itÂs very painful, and then after that, itÂs pretty much fine,
but it depends on how much the weather changes as to how much it does in the
month.

Â 

Â Â Â Â Â Â Â Â Â  Because of the knee injury, Beettner
decreased his participation in athletics.Â  Before the accident, he participated
in football, baseball, basketball, and track.Â  Afterward, he played only
baseball because of the pain associated with his knee.

Â Â Â Â Â Â Â Â Â  The jury awarded the Beettners $3,000
in damages for physical pain, mental anguish, and physical impairment suffered
in the past.Â  The jury awarded them $25,000 in damages for physical pain,
mental anguish, physical impairment, and lost earning capacity which Beettner
will suffer in the future.

Â Â Â Â Â Â Â Â Â  BeettnerÂs testimony that (1) the
injury has caused him to experience pain while walking, (2) the injury has
caused him to decrease his participation in athletics, and (3) his symptoms
have continued constitutes evidence which Âwould enable reasonable and
fair-minded peopleÂ to award damages for past and future physical impairment.Â  See
Patlyek, 149 S.W.3d at 787-88; Plainview Motels, 127 S.W.3d at 39; Schindler
Elevator Corp., 78 S.W.3d at 412.

Â Â Â Â Â Â Â Â Â  With regard to lost earning capacity, Beettner
contends that his testimony regarding the pain he frequently experiences while
walking provided a sufficient basis for the jury to award damages for lost
earning capacity.Â  Durham counters that this constitutes Âno evidenceÂ because
Beettner has not missed any work because of his injury, because the injury has
not affected his grades, and because he has continued to play baseball since
suffering the injury.Â  However, these contentions go to the factual sufficiency
of the evidence rather than the question of whether the Beettners produced
Âsome evidenceÂ of lost earning capacity.

Â Â Â Â Â Â Â Â Â  Appellate courts have affirmed damages
awarded for lost earning capacity where the plaintiff suffered a knee injury or
some other injury which affected the plaintiffÂs ability to walk.Â  See,
e.g., Allright, Inc. v. Van Scoyoc, 784 S.W.2d 942, 945 (Tex. App.ÂHouston [14th Dist.] 1990, no writ); Mo. Pac. R.R. Co. v. Schreck, 774 S.W.2d 687,
689-90 (Tex. App.ÂTexarkana 1989, no writ); Padget v. Gray, 727 S.W.2d 706,
712 (Tex. App.ÂAmarillo 1987, no writ).Â  The jury heard BeettnerÂs testimony
about how his knee injury affected his ability to walk.Â  It was for the jurors
to apply Âtheir common knowledge and sense of justiceÂ to determine the amount
of damages the Beettners should be awarded for lost earning capacity.Â  See
McIver, 169 S.W.2d at 712; Pipgras, 832 S.W.2d at 366; C.T.W.,
809 S.W.2d at 794.

Â Â Â Â Â Â Â Â Â  BeettnerÂs testimony about the pain he
experiences while walking is evidence which Âwould enable reasonable and
fair-minded peopleÂ to award damages for lost earning capacity.Â  See
Allright, 784 S.W.2d at 945; Mo. Pac. R.R., 774 S.W.2d at
689-90; Padget, 727 S.W.2d at 712.

Samantha Whiddon

Â Â Â Â Â Â Â Â Â  Durham contends that the record
contains no evidence that Samantha Whiddon suffered past or future physical
impairment or lost earning capacity.

Â Â Â Â Â Â Â Â Â  Whiddon testified that, because of a
tongue injury she suffered in the accident, her ability to speak has been
impaired.[2]Â 
Â[I]f I try to speak too quickly . . . I have to repeat myself and people canÂt
understand me . . . .ÂÂ  Her mother likewise testified that Whiddon talks
differently now and Âif she talks fast, you canÂt understand her sometimes.Â

Â Â Â Â Â Â Â Â Â  The jury awarded the Whiddons $3,000
in damages for physical pain, mental anguish, and physical impairment suffered
in the past.Â  The jury awarded them $25,000 in damages for physical pain,
mental anguish, physical impairment, and lost earning capacity which Whiddon
will suffer in the future.

Â Â Â Â Â Â Â Â Â  Appellate courts have affirmed damages
awarded for physical impairment where the plaintiff suffered an injury which
affected the plaintiffÂs ability to speak or communicate.Â  See Ramirez v.
Fifth Club, Inc., 144 S.W.3d 574, 592 (Tex. App.ÂAustin 2004), revÂd in
part on other grounds, 49 Tex. Sup. Ct. J. 863, 2006 Tex. LEXIS 638 (Tex. June 30, 2006);[3] Roberts
v. Williamson, 52 S.W.3d 343, 350-51 (Tex. App.ÂTexarkana 2001), revÂd
in part on other grounds, 111 S.W.3d 113 (Tex. 2003);[4]
see also SunBridge Healthcare, 160 S.W.3d at 253 (suggesting remittitur
from $497,000 to $150,000 for physical impairment award because of limited
duration of impairment).

Â Â Â Â Â Â Â Â Â  Thus, the evidence that WhiddonÂs
ability to speak has been impaired by her tongue injury is evidence which Âwould
enable reasonable and fair-minded peopleÂ to award damages for physical
impairment.Â  Id.

Â Â Â Â Â Â Â Â Â  It goes without saying that an
inability to speak or communicate clearly can impact a personÂs suitability for
employment.Â  Thus, appellate courts have held that damages for loss of earning
capacity may be recovered where the plaintiff suffered an injury which affected
the plaintiffÂs ability to speak or communicate.Â  See, e.g., Roberts, 52
S.W.3d at 350-51; Farley v. M. M. Cattle Co., 549 S.W.2d 453, 459-60
(Tex. Civ. App.ÂWaco 1977, writ refÂd n.r.e.). 

Â Â Â Â Â Â Â Â Â  The jury heard the testimony about how
WhiddonÂs tongue injury affected her ability to speak.Â  It was for the jurors
to apply Âtheir common knowledge and sense of justiceÂ to determine the amount
of damages the Whiddons should be awarded for lost earning capacity.Â  See
McIver, 169 S.W.2d at 712; Pipgras, 832 S.W.2d at 366; C.T.W.,
809 S.W.2d at 794.Â  Therefore, the testimony about WhiddonÂs impaired ability
to speak is evidence which Âwould enable reasonable and fair-minded peopleÂ to
award damages for lost earning capacity.Â  See Roberts, 52 S.W.3d at
350-51; Farley, 549 S.W.2d at 459-60.

Nicole Thomas

Â Â Â Â Â Â Â Â Â  Durham contends that the record
contains no evidence that Nicole Thomas suffered past physical impairment, lost
earning capacity, or future disfigurement.

Â Â Â Â Â Â Â Â Â  Thomas testified that she experienced
back, neck, and shoulder pain as a result of the accident.Â  The neck and
shoulder pain subsided, but the back pain has continued.Â  Thomas testified that
her back pain has worsened each year.Â  When she sits for more than ten minutes
at a time without moving, she experiences numbness and pain, which sometimes
becomes Âunbearable.ÂÂ  According to an orthopedic clinic report made about a
year after the accident, Thomas complained at that time that Â[s]he used to
play basketball, volleyball, and run track (hurdles).Â  These now cause her
pain, although she has played basketball since the accident.Â

Â Â Â Â Â Â Â Â Â  An orthopedic surgeon testified that
Thomas has a Âbilateral pars defectÂ exacerbated by spondylolisthesis in the L5
region.Â  The surgeon could not say whether this pars defect existed before the
accident, but the surgeon did opine that Thomas suffered a lower back injury in
this region which caused the symptoms she is now experiencing.[5]Â 
The surgeon recommends that Thomas undergo a lumbosacral fusion to treat these
symptoms.

Â Â Â Â Â Â Â Â Â  The jury awarded the Thomases $25,000
in damages for physical pain, mental anguish, and physical impairment suffered
in the past.Â  The jury awarded them $425,000 in damages for physical pain,
mental anguish, physical impairment, and lost earning capacity which Thomas
will suffer in the future.

Â Â Â Â Â Â Â Â Â  The evidence that ThomasÂs back injury
has caused her to experience pain while participating in athletics is evidence
which Âwould enable reasonable and fair-minded peopleÂ to award damages for
past and future physical impairment.Â  See Plainview Motels, 127 S.W.3d at
39; Harris County v. Smith, 66 S.W.3d 326, 331-32 (Tex. App.ÂHouston [1st Dist.] 2001), revÂd on other grounds, 96 S.W.3d 230 (Tex. 2002); Molina v. Moore, 33 S.W.3d 323, 329 (Tex. App.ÂAmarillo 2000, no pet.); Lawson-Avila
Constr., Inc. v. Stoutamire, 791 S.W.2d 584, 599-600 (Tex. App.ÂSan Antonio
1990, writ denied).

Â Â Â Â Â Â Â Â Â  Appellate courts have affirmed damages
awarded for lost earning capacity where the plaintiff suffered a back injury
which continued to cause pain, numbness, and other symptoms.Â  See PilgrimÂs
Pride Corp., 134 S.W.3d at 904; Strahan v. Davis, 872 S.W.2d 828,
833 (Tex. App.ÂWaco 1994, writ denied); Tri-State Motor Transit Co. v. Nicar,
765 S.W.2d 486, 492-93 (Tex. App.ÂHouston [14th Dist.] 1989, no writ).Â  The
jury heard the evidence about how WhiddonÂs back injury has affected her.Â  It
was for the jurors to apply Âtheir common knowledge and sense of justiceÂ to
determine the amount of damages the Thomases should be awarded for lost earning
capacity.Â  See McIver, 169 S.W.2d at 712; Pipgras, 832 S.W.2d at
366; C.T.W., 809 S.W.2d at 794.Â  Therefore, the testimony about ThomasÂs
back injury and numbness is evidence which Âwould enable reasonable and
fair-minded peopleÂ to award damages for lost earning capacity.Â  See
PilgrimÂs Pride Corp., 134 S.W.3d at 904; Strahan, 872 S.W.2d at
833; Tri-State Motor Transit Co., 765 S.W.2d at 492-93.

Â Â Â Â Â Â Â Â Â  Appellate courts have affirmed damages
awarded for physical disfigurement where the plaintiff has suffered or will
suffer scarring from surgery performed as a result of the injuries at issue.Â  See,
e.g., Tesfa v. Stewart, 135 S.W.3d 272, 276-77 (Tex. App.ÂFort Worth 2004,
pet. denied); Wal-Mart Stores, Inc. v. Tinsley, 998 S.W.2d 664, 673
(Tex. App.ÂTexarkana 1999, pet. denied); Nw. Mall, Inc. v. Lubri-Lon IntÂl,
Inc., 681 S.W.2d 797, 804 (Tex. App.ÂHouston [14th Dist.] 1984, writ refÂd
n.r.e.).Â  Therefore, the orthopedic surgeonÂs testimony that Thomas will
require back surgery is evidence which Âwould enable reasonable and fair-minded
peopleÂ to award damages for future disfigurement.Â  Id.

Summary

Â Â Â Â Â Â Â Â Â  The record contains sufficient
evidence which Âwould enable reasonable and fair-minded peopleÂ to award
damages for each of the elements Durham challenges in its first issue.Â  Thus,
the court did not err by submitting a broad-form damages question for each
plaintiff.Â  Cf. Romero, 166 S.W.3d at 226-27; Smith, 96 S.W.3d at
233-34.Â  Accordingly, we overrule DurhamÂs first issue.

FACTUAL SUFFICIENCY

Â Â Â Â Â Â Â Â Â  Durham contends in its second issue
that the evidence is factually insufficient to support the juryÂs award of
damages for each of the elements challenged in DurhamÂs first issue and for the
juryÂs award of past medical expenses.

Â Â Â Â Â Â Â Â Â  ÂUnder traditional factual sufficiency
standards, a court determines if a finding is so against the great weight and
preponderance of the evidence that it is manifestly unjust, shocks the
conscience, or clearly demonstrates bias.ÂÂ  In re C.H., 89 S.W.3d 17, 25
(Tex. 2002).

Michael Beettner

Â Â Â Â Â Â Â Â Â  Durham contends that there is
factually insufficient evidence that Beettner suffered past or future physical
impairment or lost earning capacity.Â  Durham also contends that the juryÂs
award of $500 for past medical expenses is excessive.

Â Â Â Â Â Â Â Â Â  Durham argues that the evidence is
factually insufficient on the elements of past and future physical impairment
and lost earning capacity because there is evidence that: (1) Beettner was
having no trouble with the mechanics of his knee and no swelling or instability
nine days after the accident when he had his initial visit with an orthopedic
surgeon; (2) Beettner had broken nine bones before this accident and has a high
tolerance for pain; (3) Beettner is not taking pain medication for his knee; (4)
the knee injury did not affect his grades or his ability to play high school
baseball; and (5) the knee injury has not affected his plans to attend
community college and has not caused him to miss work.

Â Â Â Â Â Â Â Â Â  However, in light of BeettnerÂs
testimony that (1) the injury has caused him to experience pain while walking,
(2) the injury has caused him to decrease his participation in athletics, and
(3) his symptoms have continued, we hold that the evidence is factually
sufficient to support the juryÂs award of damages for past and future physical
impairment.Â  See Plainview Motels, 127 S.W.3d at 39; Schindler
Elevator Corp., 78 S.W.3d at 412.

Â Â Â Â Â Â Â Â Â  In light of BeettnerÂs testimony that
he frequently experiences pain while walking, we hold that the evidence is factually
sufficient to support the juryÂs award of damages for lost earning capacity.Â  Allright,
784 S.W.2d at 945; Mo. Pac. R.R., 774 S.W.2d at 689-90; Padget,
727 S.W.2d at 712; see also Pipgras, 832 S.W.2d at 366; C.T.W.,
809 S.W.2d at 794.

Â Â Â Â Â Â Â Â Â  Durham contends that the juryÂs award
of $500 for past medical expenses is excessive because the only evidence
admitted with regard to BeettnerÂs medical expenses consisted of: (1) an
affidavit of $195 in expenses for an orthopedic surgeon; and (2) the partiesÂ
stipulation that Âthere are no other past medical bills for Michael Beettner
for emergency room treatment other than the two stipulated amounts of $25 and
$88.Â[6]

Â Â Â Â Â Â Â Â Â  Beettner also offered an affidavit
from a records custodian that the billing records from his emergency room visit
were Âvoided.ÂÂ  Beettner argues on appeal that the jury could look to TurnerÂs
emergency room bills and infer that he would have had an ER physician charge
Âof about $215,Â which is the amount Turner was billed by her ER physician.[7]Â 
However, this argument ignores the binding effect of the partiesÂ stipulation.

Â Â Â Â Â Â Â Â Â  ÂA stipulation is Âan agreement,
admission, or concession made in a judicial proceeding by the parties or their
attorneys respecting some matter incident thereto.ÂÂÂ  Shepherd v. Ledford,
962 S.W.2d 28, 33 (Tex. 1998) (quoting Ortega-Carter v. Am. IntÂl Adjustment
Co., 834 S.W.2d 439, 441-42 (Tex. App.ÂDallas 1992, writ denied)); Travelers
Indem. Co. v. Starkey, 157 S.W.3d 899, 903-04 (Tex. App.ÂDallas 2005, pet.
denied).Â  Under Rule of Civil Procedure 11, a stipulation is enforceable if it
is in writing, signed, and filed as part of the record, or made in open court
and entered of record.Â  See Tex.
R. Civ. P. 11; Travelers Indem. Co., 157 S.W.3d at 904.Â  A
stipulation is binding on the parties and the court.Â  See Shepherd, 962
S.W.2d at 33; Travelers Indem. Co., 157 S.W.3d at 904; Houston
Lighting & Power Co. v. City of Wharton, 101 S.W.3d 633, 641 (Tex. App.ÂHouston [1st Dist.] 2003, pet. denied).

Â Â Â Â Â Â Â Â Â  Beettner stipulated on the record that
his only costs Âfor emergency room treatmentÂ amounted to $113.Â  He cannot now
contend that the jury could look to TurnerÂs medical records as evidence of how
much he was charged by the ER physician.Â  Id.Â  Therefore, the evidence
is factually insufficient to support the juryÂs award to the Beettners of $500
for past medical expenses.Â  Accordingly, we will suggest a remittitur of $192. See Tex. R. App. P. 46.3; Torrington Co.
v. Stutzman, 46 S.W.3d 829, 851 (Tex. 2000); Burke v. Union Pac. Res.
Co., 138 S.W.3d 46, 72 (Tex. App.--Texarkana 2004, pet. denied).

Samantha Whiddon

Â Â Â Â Â Â Â Â Â  Durham contends that there is
factually insufficient evidence that Whiddon suffered past or future physical
impairment or lost earning capacity.Â  Durham also contends that the juryÂs
award of $3,000 for past medical and dental expenses is excessive.

Â Â Â Â Â Â Â Â Â  Durham argues that the evidence is
factually insufficient on the elements of past and future physical impairment
and lost earning capacity because there is evidence that Whiddon: (1) has
maintained straight-AÂs in school; (2) is taking night courses at a community
college; (3) is on the swim team and student council; and (4) has been
coordinating youth activities at her church.Â  However, in light of the
testimony from Whiddon and her mother about WhiddonÂs impaired ability to
speak, we hold that the evidence is factually sufficient to support the juryÂs
award of damages for past and future physical impairment.Â  See SunBridge
Healthcare, 160 S.W.3d at 253; Ramirez, 144 S.W.3d at 592; Roberts,
52 S.W.3d at 350-51.Â  We likewise hold that the evidence is factually
sufficient to support the juryÂs award of damages for lost earning capacity.Â  See
Roberts, 52 S.W.3d at 350-51; Farley, 549 S.W.2d at 459-60; see
also Pipgras, 832 S.W.2d at 366; C.T.W., 809 S.W.2d at 794.

Â Â Â Â Â Â Â Â Â  Durham contends that the juryÂs award
of $3,000 for past medical and dental expenses is excessive because the only
evidence admitted with regard to WhiddonÂs expenses consisted of medical
expense affidavits of: (1) $348 for ambulance services; (2) $532 for emergency
room services; (3) $191 for dental services (Oct. to Nov. 1998); (4) $70 for
dental services (July 1999); (5) $1,379[8]
for dental services (Apr. to May 2003).Â  Whiddon also offered in evidence two
receipts totaling $11.53 for medicines.Â  This evidence accounts for $2,531.53
in medical and dental expenses.

Â Â Â Â Â Â Â Â Â  Nevertheless, Whiddon responds that
the evidence shows that her actual expenses exceeded the $3,000 award because a
dentist, Dr. Hall, testified that he bonded her two injured teeth for $70 in
July 1999 and these teeth would require re-bonding every two years.Â  However,
Dr. Hall also testified that another dentist, Dr. Chuoke, re-bonded WhiddonÂs
teeth in 2003.Â  Dr. ChuokeÂs charges for this procedure are included within the
$1,379 charged for dental services from April to May 2003 as indicated above.Â 
There is no evidence in the record that WhiddonÂs teeth were re-bonded in 2001
or on any other occasion before the January 2004 trial.

Â Â Â Â Â Â Â Â Â  Therefore, the evidence is factually
insufficient to support the juryÂs award to the Whiddons of $3,000 for past
medical expenses.Â  Accordingly, we will suggest a remittitur of $468.47. See
Tex. R. App. P. 46.3; Torrington
Co., 46 S.W.3d at 851; Burke, 138 S.W.3d at 72.

Nicole Thomas

Â Â Â Â Â Â Â Â Â  Durham contends that there is
factually insufficient evidence that Thomas suffered past physical impairment,
lost earning capacity, or future disfigurement.Â  Durham also contends that the
juryÂs award of $10,000 for past medical expenses is excessive.

Â Â Â Â Â Â Â Â Â  Durham argues that the evidence is
factually insufficient on the element of past physical impairment and lost
earning capacity because Thomas testified that she was able to play volleyball
and basketball after sitting out for a year without ÂaggravatingÂ her back
injury or making it worse.Â  However, in light of ThomasÂs testimony that her
back injury has caused her to experience pain while participating in athletics,
that her back pain has worsened, and that she is experiencing numbness in her
leg, we hold that the evidence is factually sufficient to support the juryÂs
award of damages for past physical impairment.Â  See Plainview Motels,
127 S.W.3d at 39; Smith, 66 S.W.3d at 331-32; Molina, 33 S.W.3d at
329; Lawson-Avila Constr., 791 S.W.2d at 599-600.

Â Â Â Â Â Â Â Â Â  We likewise hold that the evidence is
factually sufficient to support the juryÂs award of damages for lost earning
capacity.Â  See PilgrimÂs Pride Corp., 134 S.W.3d at 904; Strahan,
872 S.W.2d at 833; Tri-State Motor Transit Co., 765 S.W.2d at 492-93; see
also Pipgras, 832 S.W.2d at 366; C.T.W., 809 S.W.2d at 794.

Â Â Â Â Â Â Â Â Â  With regard to the ThomasesÂ claim for
damages for future disfigurement, Durham argues only that the evidence is
factually insufficient because the orthopedic surgeonÂs testimony is conclusory
on its face.Â  However, we have already rejected this argument.Â  Based on the
surgeonÂs testimony that Thomas will require a lumbosacral fusion, we hold that
the evidence is factually sufficient to support the juryÂs award of damages for
future disfigurement.Â  See Wal-Mart Stores, 998 S.W.2d at 673; Nw.
Mall, 681 S.W.2d at 804.

Â Â Â Â Â Â Â Â Â  Durham contends that the juryÂs award
of $10,000 for past medical expenses is excessive because the evidence supports
an award for only $4,094.Â  However, the documentary evidence admitted shows
that the Thomases incurred the following expenses: (1) $125 for pediatrician;
(2) $3,019 for orthopedic services; (3) $600 for a CT scan; (4) $348 for
emergency room treatment; (5) $362 for neurologist; (6) $387 for ambulance;[9]
and (7) $215 for ER physician.Â  This evidence amounts to $5,056 in past medical
expenses.

Â Â Â Â Â Â Â Â Â  Durham does not challenge any of the
listed evidence as not being part of the ThomasesÂs reasonable and necessary
medical costs.Â  Thomas concedes that a remittitur of $4,944 is warranted.Â 
Therefore, because the evidence is factually insufficient to support the juryÂs
award to Thomas of $10,000 for past medical expenses, we will suggest a remittitur of $4,944. See Tex. R. App. P. 46.3; Torrington Co.,
46 S.W.3d at 851; Burke, 138 S.W.3d at 72.

Summary

Â Â Â Â Â Â Â Â Â  The record contains factually
sufficient evidence to support the juryÂs award of damages to the Beettners and
the Whiddons for past and future physical impairment and for lost earning capacity.Â 
The record likewise contains factually sufficient evidence to support the
juryÂs award of damages to the Thomases for past physical impairment, lost
earning capacity, and future disfigurement.

Â Â Â Â Â Â Â Â Â  However, the evidence is factually
insufficient to support the damages awarded for past medical expenses.Â 
Therefore, we will suggest a remittitur of $192 for the BeettnersÂ past medical
expenses; we will suggest a remittitur of $468.47 for the WhiddonsÂ past
medical expenses; and we will suggest a remittitur of $4,944 for the ThomasesÂ past medical expenses.Â  Accordingly, we
sustain DurhamÂs second issue in part and overrule it in part.

ATTORNEYÂS FEES

Â Â Â Â Â Â Â Â Â  Durham contends in its fourth issue
that the court abused its discretion by awarding attorneyÂs fees to Appellees
because they failed to plead and prove a claim for attorneyÂs fees to the
jury.Â  Durham contends in its fifth issue that the court abused its discretion
by awarding attorneyÂs fees under the Uniform Declaratory Judgments Act because
Appellees pursued a post-trial claim for declaratory relief solely as a basis
for obtaining attorneyÂs fees.

Â Â Â Â Â Â Â Â Â  The Uniform Declaratory Judgments Act
provides in pertinent part:

Â Â Â Â Â Â Â Â Â  A person . . . whose rights, status,
or other legal relations are affected by a statute, municipal ordinance,
contract, or franchise may have determined any question of construction or
validity arising under the . . . Â statute, ordinance, contract, or franchise
and obtain a declaration of rights, status, or other legal relations thereunder.

Â 

Tex. Civ.
Prac. & Rem. Code Ann.
Â§ 37.004(a) (Vernon 1997).Â  Thus, the constitutionality of a statute may be
challenged under this Act.Â  See, e.g., Neeley v. W. Orange-Cove Consol.
Indep. Sch. Dist., 176 S.W.3d 746 (Tex. 2005).Â  Reasonable and necessary
attorneyÂs fees may be recovered in suits brought under this Act.Â  See Tex. Civ. Prac. & Rem. Code Ann. Â§ 37.009
(Vernon 1997).

Â Â Â Â Â Â Â Â Â  However, Â[t]here is no
basis for declaratory relief if the party seeking such relief is already
seeking a different, enforceable remedy, and a judicial declaration would add
nothing to what would be implicit or express in a final judgment for the
enforceable remedyÂ already being sought.Â  Strayhorn v. Raytheon E-Sys.,
Inc., 101 S.W.3d 558, 572 (Tex. App.ÂAustin 2003, pet. denied) (quoting Universal
Printing Co. v. Premier Victorian Homes, Inc., 73 S.W.3d 283, 296 (Tex.
App.ÂHouston [1st Dist.] 2001, pet. denied)); accord U.S. Bank v. Prestige
Ford Garland Ltd. PÂship, 170 S.W.3d 272, 278 (Tex. App.ÂDallas 2005, no
pet.).Â  Thus, it is an abuse of discretion to award attorneyÂs fees under the
Uniform Declaratory Judgments Act if the claim for declaratory relief is urged
solely as a vehicle to obtain attorneyÂs fees.Â  See U.S. Bank, 170
S.W.3d at 278; Raytheon E-Sys., 101 S.W.3d at 572.

Â Â Â Â Â Â Â Â Â  Here, Appellees urged a
claim for declaratory relief to determine whether the current prejudgment and
postjudgment interest statutes are retroactive laws which cannot be
constitutionally applied in their case.Â  However, AppelleesÂ constitutional
claims could have easily been raised under their prior pleadings in conjunction
with their request for prejudgment and postjudgment interest and without the
necessity of a separate claim for declaratory relief. Â See, e.g., In re
B.R.S., 166 S.W.3d 373, 374 (Tex. App.ÂWaco 2005, no pet.); In re N.A.S.,
100 S.W.3d 670, 671 (Tex. App.ÂDallas 2003, no pet.); Willard v. Davis,
881 S.W.2d 907, 910 (Tex. App.ÂFort Worth 1994, orig. proceeding).Â  Therefore,
we conclude that Appellees urged their claim for declaratory relief solely as a
vehicle to obtain attorneyÂs fees.Â  See U.S. Bank, 170 S.W.3d at 278; Raytheon
E-Sys., 101 S.W.3d at 572.

Â Â Â Â Â Â Â Â Â  For this reason, the court
abused its discretion by awarding Appellees attorneyÂs fees under the Uniform
Declaratory Judgments Act.Â  Id.Â  AttorneyÂs fees are not recoverable in
a personal injury suit premised on negligence.Â  See Gulf States Utils. Co. v. Low, 79 S.W.3d 561, 568 (Tex. 2002); City of Houston v. Woods, 138 S.W.3d 574, 582-83 (Tex. App.ÂHouston [14th Dist.] 2004, no
pet.).Â  Appellees assert no other legal basis to support the trial courtÂs
award of attorneyÂs fees.

Â Â Â Â Â Â Â Â Â  Therefore, the court abused
its discretion by awarding attorneyÂs fees to Appellees.Â  Accordingly, we
sustain DurhamÂs fourth and fifth issues.

RETROACTIVE LAWS

Â Â Â Â Â Â Â Â Â  Durham contends in its
third issue that the court erred by declaring the prejudgment and postjudgment
interest statutes to be unconstitutional retroactive laws as applied in
AppelleesÂ case.Â  The trial court declared these statutes unconstitutional
insofar as section 304.1045 of the Finance Code now prohibits the award of
prejudgment interest on future damages and section 304.003 has been amended so
that the current rate of interest for a judgment has been reduced from ten
percent to five percent per annum.

Â Â Â Â Â Â Â Â Â  In 1998 when the accident
occurred, section 304.102 of the Finance Code provided, ÂA judgment in a
wrongful death, personal injury, or property damage case must include
prejudgment interest.ÂÂ  Act of May 24, 1997, 75th Leg., R.S., ch. 1008, Â§ 1,
sec. 304.102, 1997 Tex. Gen. Laws 3091, 3435 (amended 1999) (current version at
Tex. Fin. Code Ann. Â§ 304.102 (Vernon Supp. 2005)).[10]Â 
Under section 304.102 and its predecessor, courts held that prejudgment
interest was recoverable on future damages.Â  See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 530 (Tex. 1998); Brookshire
Grocery Co. v. Smith, 99 S.W.3d 819, 825 (Tex. App.ÂBeaumont 2003, pet.
denied); Reliable Consultants, Inc. v. Jaquez, 25 S.W.3d 336, 347 (Tex.
App.ÂAustin 2000, pet. denied).

Â Â Â Â Â Â Â Â Â  In 2003 however, the
Legislature effectively overruled these decisions by enacting section 304.1045
of the Finance Code which provides, ÂPrejudgment interest may not be assessed
or recovered on an award of future damages.ÂÂ  Tex.
Fin. Code Ann. Â§ 304.1045 (Vernon Supp. 2005).Â  Section 304.1045 applies
to Âany case in which a final judgment is signed or subject to appeal on or
after the effective date of this Act.ÂÂ  Act of June 2, 2003, 78th Leg., R.S.,
ch. 204, Â§ 6.04, 2003 Tex. Gen. Laws 847, 862.Â  The effective date of the
statute was September 1, 2003.Â  Id. Â§ 23.02(a), 2003 Tex. Gen. Laws 847,
898.Â  The judgment in this case was not signed until January 6, 2005.

Â Â Â Â Â Â Â Â Â  The postjudgment interest
rate in 1998 was ten percent per annum.[11]Â 
See Act of May 24, 1997, 75th Leg., R.S., ch. 1008, Â§ 1, sec.
304.003(c)(2), 1997 Tex. Gen. Laws 3091, 3435 (amended 2003) (current version
at Tex. Fin. Code Ann. Â§ 304.003(c)(2)
(Vernon Supp. 2005)).Â  The 2003 amendment to section 304.003(c) halved the applicable
rate so that judgments now bear interest at the rate of five percent per annum.[12]Â  See Tex. Fin. Code Ann. Â§ 304.003(c)(2).Â  This amendment took
effect on September 1, 2003.Â  See Act of June 2, 2003, 78th Leg., R.S.,
ch. 204, Â§ 23.02(a), 2003 Tex. Gen. Laws 847, 898.

Â Â Â Â Â Â Â Â Â  Article I, section 16 of
the Texas Constitution provides, ÂNo bill of attainder, ex post facto law,
retroactive law, or any law impairing the obligation of contracts, shall be
made.ÂÂ  Tex. Const. art. I, Â§ 16.Â 
A statute violates the Âretroactive lawÂ prohibition of article I, section 16
if it Âoperate[s] retroactively to deprive or impair vested substantive rights
acquired under existing laws, or create[s] new obligations, impose[s] new
duties, or adopt[s] new disabilities in respect to transactions or
considerations past.ÂÂ  In re J.B.W., 99 S.W.3d 218, 223 (Tex. App.ÂFort Worth 2003, pet. denied) (quoting In re Tex. DepÂt of Protective &
Regulatory Servs., 71 S.W.3d 446, 450 (Tex. App.ÂFort Worth 2002, orig.
proceeding) (per curiam));[13] accord
Price Pfister, Inc. v. Moore & Kimmey, Inc., 48 S.W.3d 341, 353 (Tex.
App.ÂHouston [14th Dist.] 2001, pet. denied).

Â Â Â Â Â Â Â Â Â  A Âvested rightÂ implies an immediate
right or entitlementÂit is not an expectation or a contingency.Â  ÂWhen the
authority granting the right has the power and discretion to take that right
away, it cannot be said to be a vested right.ÂÂ  Engrained in the concept of
vested rights is the idea of certainty.Â  When a lawmaking power can declare
that a right does not exist, the right is not Âfixed or vested.ÂÂ  Further, the
triggering date of a vested right must be readily ascertainable.Â  The filing of
a lawsuit in order to obtain relief or pursue a remedy is generally held not to
create or destroy vested rights; the triggering event for the vesting of a
right is the resolution of the controversy and the final determinationÂnot the
filing of the suit.

Â 

Houston Indep. Sch. Dist. v. Houston Chronicle PublÂg
Co., 798 S.W.2d 580,
589 (Tex. App.ÂHouston [1st Dist.] 1990, writ denied) (quoting Ex parte
Abell, 613 S.W.2d 255, 262 Â (Tex. 1981) (orig. proceeding)) (citing McCain
v. Yost, 155 Tex. 174, 284 S.W.2d 898, 900 (1955)) (other citations
omitted).

Â Â Â Â Â Â Â Â Â  Here, AppelleesÂ ÂrightÂ to
prejudgment and postjudgment interest was not ÂvestedÂ until entry of the trial
courtÂs judgment.[14]Â  See
id.; accord Walls v. First State Bank, 900 S.W.2d 117, 121-22 (Tex. App.ÂAmarillo 1995, writ denied).Â  Therefore, the court erred by holding that the
prejudgment and postjudgment interest statutes are unconstitutional retroactive
laws as applied in AppelleesÂ case.Â  See Walls, 900 S.W.2d at 121-22;
 Houston Indep. Sch. Dist., 798 S.W.2d at 589-90.Â  Accordingly, we sustain
 DurhamÂs third issue and do not reach DurhamÂs sixth issue concerning the
summary judgment.

PREJUDGMENT INTEREST AWARD

Â Â Â Â Â Â Â Â Â  Durham contends in its
seventh issue that the court erred by awarding prejudgment interest on
AppelleesÂ award of court costs and attorneyÂs fees.

Â Â Â Â Â Â Â Â Â  Because we have concluded
that Appellees are not entitled to recover attorneyÂs fees, they necessarily
are not entitled to recover prejudgment interest for their attorneyÂs fees.

Â Â Â Â Â Â Â Â Â  Prejudgment interest has
been defined as Âadditional damages for the loss of use of money due as damages
during the period between the accrual of the claim and the date of judgment.ÂÂ  Embrey
v. Royal Indem. Co., 986 S.W.2d 729, 732 (Tex. App.ÂDallas 1999) (quoting LaCoure
v. LaCoure, 820 S.W.2d 228, 237 (Tex. App.ÂEl Paso 1991, writ denied)), affÂd,
22 S.W.3d 414 (Tex. 2000); accord Chilton Ins. Co. v. Pate & Pate
Enters., 930 S.W.2d 877, 897 (Tex. App.ÂSan Antonio 1996, writ denied); Beutel
v. Dallas County Flood Control Dist., 916 S.W.2d 685, 696 (Tex. App.ÂWaco
1996, writ denied).Â  Therefore, we hold that prejudgment interest should be
calculated based on the past damages awarded.Â  Court costs should not be
included in this calculation.

Â Â Â Â Â Â Â Â Â  Accordingly, we sustain DurhamÂs seventh issue.

Conclusion

The record contains legally and
factually sufficient evidence to support the juryÂs award of damages for
BeettnerÂs and WhiddonÂs past and future physical impairment and lost earning
capacity and for ThomasÂs past physical impairment, lost earning capacity, and
future disfigurement.Â  Accordingly, we affirm that portion of the judgment
which awards these elements of damages

The evidence is factually
insufficient with regard to the damages awarded to Appellees for past medical
expenses. Â Therefore, we suggest a
remittitur of $5,604.47 consisting of: (1) $192 for BeettnerÂs past medical
expenses; (2) $468.47 for WhiddonÂs past medical expenses; and (3) $4,944 for
ThomasÂs past medical expenses.Â  Therefore, if Appellees file a remittitur of $5,604.47
with the Clerk of this Court within twenty-one (21) days after the date of this
opinion, we will modify the trial courtÂs judgment to award damages for past
medical expenses of $7,895.53.[15]

However, if Appellees fail to make the suggested
remittitur, we will reverse the judgment and remand this cause for a new
trial.Â  See Tex. R. App. P. 44.1(b);
Estrada v. Dillon, 44 S.W.3d 558, 562 (Tex. 2001) (per curiam).

We reverse the judgment insofar as it awards
AppelleesÂ attorneyÂs fees and render judgment that Appellees take nothing on
their claim for attorneyÂs fees.

We reverse the judgment insofar as it awards
prejudgment interest and render judgment that Appellees recover prejudgment
interest on their past damages but not on court costs.Â  We reverse the judgment
insofar as it awards postjudgment interest and render judgment that
postjudgment interest shall accrue on the judgment at the rate of five percent
per annum.

Â 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed in part,
Reversed and Rendered in part

Â Â Â Â Â Â Â Â Â  Remittitur
suggested

Opinion delivered and
filed July 19, 2006

[CV06]

Â 

Â 

Â 

Â 

Â 









[1]
Â Â Â Â Â Â Â Â Â  The charge instructed the jury
to assess AppelleesÂ damages for Âloss of earnings or earning capacityÂ in the
future.Â  Although lost earnings and lost earning capacity are distinct elements
of damages, the arguments and authorities in the appellate briefs and the trial
courtÂs inclusion of these elements as future damages both support a conclusion
that that the issue here concerns loss of earning capacity rather than loss of
earnings.Â  Cf. Koko Motel, Inc. v. Mayo, 91 S.W.3d 41, 51 (Tex.
App.ÂAmarillo 2002, pet. denied) (Âlost wages or earnings refers to the actual
loss of income due to an inability to perform a specific job from the time
of injury to the time of trialÂ) (emphasis added).Â Â  





[2]
Â Â Â Â Â Â Â Â Â  Appellees also contend that the
following excerpt from the reporterÂs record shows that WhiddonÂs impaired
speech was demonstrated for the jury by her inability to plainly enunciate the
word ÂFordÂ during direct examination.Â  However, the record is not clear on
this issue.Â  Whiddon testified that the accident happened near Âthe Cleburne
Ford house.ÂÂ  Then the following transpired:

Â 

Â Â Â Â Â Â Â Â Â Â Â  Counsel: The Cleburne what?

Â 

Â Â Â Â Â Â Â Â Â Â Â  Whiddon:Â Â Â Â Â Â Â Â Â Â Â  Cleburne Ford house.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Counsel: Ford?

Â 

Â Â Â Â Â Â Â Â Â Â Â  Whiddon: Â Â Â Â Â Â Â Â Â Â  Yeah.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Counsel: Oh, the Ford dealership.

Â 

It is unclear from this record whether AppelleesÂ counselÂs
apparent confusion stemmed from a misunderstanding of the phrase Whiddon used
to describe the dealership or from WhiddonÂs alleged Âdifficulty saying the
word ÂFord,ÂÂ as Appellees contend in their brief.Â  Counsel could have
eliminated any confusion in this regard by asking that the record be made to
reflect that Whiddon was having difficulty saying this word, if that were the
case.Â  See Piotrowski v. Minns, 873 S.W.2d 368, 370 (Tex. 1993) (ÂAt
every stage of the proceedings in the trial court, litigants must exercise some
diligence to ensure that a record of any error will be available in the event
that an appeal will be necessary.Â).





[3]
Â Â Â Â Â Â Â Â Â  The petitioners in Ramirez
did not challenge the juryÂs award of damages for physical impairment in the
Supreme Court.Â  See Fifth Club, Inc. v. Ramirez, 49 Tex. Sup. Ct. J. 863, 869, 2006 Tex. LEXIS 638, at *23-25 (Tex. June 30, 2006) (affirming award of
future mental anguish damages).

Â 





[4]
Â Â Â Â Â Â Â Â Â  The Supreme Court in Roberts
reversed only on the lower courtÂs holding Âthat parents may recover for the
loss of filial consortiumÂ resulting from a non-fatal injury to a child.Â  See
Roberts v. Williamson, 111 S.W.3d 113, 114-15 (Tex. 2003).





[5]
Â Â Â Â Â Â Â Â Â  Durham contends as part of its
first issue that the orthopedic surgeonÂs testimony is Âno evidenceÂ because it
is conclusory.Â  Although an objection must be made to challenge the reliability
of an expertÂs testimony, no trial objection is required Â[w]hen the testimony
is challenged as conclusory or speculative and therefore non-probative on its
face.ÂÂ  Coastal Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227,
233 (Tex. 2004).Â  Expert testimony is considered Âconclusory or speculativeÂ
when it has no factual substantiation in the record.Â  See United Servs.
Auto. AssÂn v. Croft, 175 S.W.3d 457, 463-64 (Tex. App.ÂDallas 2005, no
pet.); Gabriel v. Lovewell, 164 S.W.3d 835, 846 (Tex. App.ÂTexarkana 2005,
no pet.).Â  Here, the orthopedic surgeon based her opinions on her 2 physical
examinations of Thomas, ThomasÂs reports of her symptoms and medical history,
CT scans, x-rays, and ThomasÂs progress in physical therapy.Â  Accordingly, we
reject DurhamÂs contention that the surgeonÂs testimony on its face is
conclusory or speculative.Â  See Welch v. McLean, 191 S.W.3d 147, 157-59
(Tex. App.ÂFort Worth 2005, no pet.); United Servs. Auto. AssÂn, 175
S.W.3d at 464-67; Gabriel, 164 S.W.3d at 846.





[6]
Â Â Â Â Â Â Â Â Â  The parties made this
stipulation on the record in response to a note from the jury asking, ÂAre
there .Â  .Â  .Â  other past medical bills for Michael Beettner for emergency room
treatment?Â

Â 





[7]
Â Â Â Â Â Â Â Â Â  Beettner and Turner were treated
at the same emergency room.





[8]
Â Â Â Â Â Â Â Â Â  The affidavit and accompanying
records for Dr. Chuoke reflect total billings of $1,415.Â  However, the last
entry on the statement is for ÂProphylaxis, AdultÂ in the amount of $36.Â  Apparently,
this last entry was not for WhiddonÂs treatment.





[9]
Â Â Â Â Â Â Â Â Â  The record actually contains 2
affidavits admitted as PlaintiffsÂ Exhibits 11 and 13 for the same $387
ambulance bill.Â  The court also admitted 2 exhibits regarding ThomasÂs
orthopedic care: PlaintiffsÂ Exhibit 4 for $2,429 in services provided from
October 18, 1999 to December 13, 1999; and PlaintiffsÂ Exhibit 142 for $3,019
in services provided from October 18, 1999 to June 5, 2003.





[10]
Â Â Â Â Â Â Â Â  Section 304.102 currently
provides, ÂA judgment in a wrongful death, personal injury, or property damage
case earns prejudgment interest.ÂÂ  Tex.
Fin. Code Ann. Â§ 304.102 (Vernon Supp. 2005).





[11]
Â Â Â Â Â Â Â Â  More precisely, the interest rate
was 10 percent per annum if the published auction rate for treasury bills was
less than 10 percent.Â  The applicable rate would be 20 percent if the auction
rate was more than 20 percent.Â  See Act of May 24, 1997, 75th Leg., R.S., ch. 1008,
Â§ 1, sec. 304.003(c), 1997 Tex. Gen. Laws 3091, 3435 (amended 2003) (current
version at Tex. Fin. Code Ann. Â§ 304.003(c)
(Vernon Supp. 2005)).

Â 





[12]
Â Â Â Â Â Â Â Â  Another amendment to section
304.003 is that the applicable rate is now determined with reference to the
Âprime rate as published by the Federal Reserve Bank of New YorkÂ rather than
the t-bill auction rate.Â  See Tex.
Fin. Code Ann. Â§ 304.003(c).Â  The applicable rate is 5 percent if the
prime rate is less than 5 percent or 15 percent if the prime rate is more than
15 percent.Â  Id.





[13]
Â Â Â Â Â Â Â Â  The original quotation is found
in Ex parte Abell, 613 S.W.2d 255, 260 Â (Tex. 1981) (orig. proceeding).





[14]
Â Â Â Â Â Â Â Â  In fact, the jury did not even
determine that Appellees were entitled to damages until after the effective
date of the amendments to the prejudgment and postjudgment interest statutes.





[15]
Â Â Â Â Â Â Â Â  This modified award would consist
of $308 for BeettnerÂs past medical expenses, $2,531.53 for WhiddonÂs past
medical expenses, and $5,056 for ThomasÂs past medical expenses.