Frank PIPGRAS, d/b/a Las Chaumiera Apartments and Response Property Management, Appellants,

v.

David HART, Guardian ad Litem for Michael Christopher Patterson, Donald D. Patterson and Lily Patterson, Individually and as Next Friend of Michael Christopher Patterson, a Minor Child, Appellees.

No. 2–90–318–CV.

Court of Appeals of Texas, Fort Worth.

May 13, 1992.

Rehearing Overruled July 15, 1992.

Cowles & Thompson, R. Michael Northrup and Michael W. Huddleston, Dallas, for appellants.

Law Offices of Windle Turley, P.C., David R. Weiner, and Michael P. Metcalf, Dallas, for appellees.

Before JOE SPURLOCK, III, HILL and FARRIS, JJ.

OPINION

FARRIS, Justice.

Michael Christopher Patterson, age four, was injured when a car driven by Ivette Real Espinoza struck a brick column causing it to fall on him. The column was one of several similar columns located in the Las Chaumiera Apartments which were owned by Frank Pipgras and managed by Response Property Management. The Pattersons lived in one of the apartments. A jury found the negligence of Pipgras, Response, Espinoza, and the owner of the car proximately caused the occurrence. The jury apportioned the responsibility five percent to Pipgras, twenty percent to Response, sixty percent to Espinoza, and fifteen percent to the car owner. The trial court found Espinoza was a settling person and in its judgment reduced the jury's awards of damages to appellees against Pipgras and Response.

Pipgras and Response appeal raising eleven points of error: (1) they owed no duty to the plaintiffs because the injury was unforeseeable; (2) there was insufficient evidence of negligence; (3) a witness not designated in response to discovery was permitted to testify; (4) through (10) the evidence was either legally or factually insufficient to support jury findings of future damages; and (11) the damage issue should have been submitted in broad form rather than in a form requiring the jury to address various elements of damages.

In two cross-points the appellees contend the trial court erred in allowing a credit to appellants based on an erroneous finding Espinoza was a settling person and in limiting prejudgment interest to accrued damages.

We overrule all of appellants' points and appellees' second cross-point. We sustain the first cross-point and affirm the judgment.

In their first point appellants complain the trial court erred in overruling their motion for judgment notwithstanding the verdict because the accident was not foreseeable, and thus, they breached no duty. In point two they complain the evidence of foreseeability was insufficient to sustain the jury findings they were negligent. We overrule points one and two because there was both legally and factually sufficient evidence the appellants could have reasonably anticipated that an injury of the sort suffered by Michael was a logical consequence of the condition of the column which fell.

Although witnesses for both sides described the columns, photographs of the columns provide the most graphic description. In addition to the column which injured Michael, three standing columns are portrayed. The columns are along the outside edge of a sidewalk running between ground floor apartments and an adjoining parking lot. The sidewalk is approximately four inches higher than the parking lot, and the columns are flush with the edge of the sidewalk. The columns are twenty-seven bricks high, three bricks long, two rows deep and run lengthwise along the sidewalk edge. The bricks are in stacks rather than overlapped. From the photographs it is clear that, in at least two of the columns, the two rows of bricks have separated with mortar missing between the rows. The separation extends eight bricks from the bottom in one column and five bricks high in the other. In at least one of the columns the outer row of bricks, adjoining the parking lot, has shifted so that one of the three stacks of bricks in the outer row extends closer to the parking lot than the remaining two.

The parking lot is paved with asphalt, and individual parking spaces are marked by painted lines which extend at or near the column-lined sidewalk. Parking spaces are arranged so that parking is perpendicular to the sidewalk. In front of some of the parking spaces are concrete wheel stops set approximately four feet from the sidewalk edge. The wheel stops are rounded across the top and similar to those commonly used in parking lots.

Espinoza was attempting to move the car and give another driver the parking space in front of the column when she lost control, and the car went over one of the wheel stops and rammed the column. Michael

was standing on the sidewalk near one of the columns when it was hit by the car. The column broke into three pieces, and one of the pieces fell hitting Michael in the head. Espinoza was unlicensed, but had driven the car before.

■ Appellants contend they owed no duty to protect Michael from the injury he suffered because they were not responsible for the criminal acts of third parties and could not reasonably foresee what they characterize as the criminal act of Espinoza. In support of this argument they point out an investigating police officer had cited the driver with "reckless damage," there was no evidence of earlier problems of injury caused by criminal drivers, and even though there was evidence that the columns had been chipped or bumped by cars and that one had required substantial repair, the occurrence was unforeseeable. We reject appellants' argument because it ignores their liability for their own acts or omissions and misconstrues appellees' burden of proof. It was the appellees' burden to prove appellants' conduct was a cause of the accident and not to exclude Espinoza's negligence as a cause, because all who contribute to an injury are liable, and the negligence of one does not excuse the negligence of others. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex.1987).

Appellees called adverse witnesses, contractors, architects and engineers, who testified about the history and condition of the columns. There was testimony the columns had been hit by cars before, including an incident, in December 1984, when a car had either knocked down or so damaged a column that it had to be rebuilt. There was testimony the risks involved were known to appellants. There was testimony the columns were inherently dangerous because of the way they were constructed and their proximity to the parking area. There was testimony the wheel stops were not designed to prevent this sort of accident but that the accident could have been prevented with vertical steel posts which could have been easily and cheaply installed. There was expert testimony the columns were not properly anchored, de-

signed, or reinforced. There was also expert testimony the columns were manifestly dangerous, dangerous even without the risk of being hit by a car, and their unprotected location adjacent to the parking lot made the apartments unsafe for habitation. The photographs demonstrated the column defects enumerated by appellees' experts and were evidence appellants should have known the columns were disintegrating.

■ Appellants owed Michael and his family, as invitees, the ordinary care a reasonably prudent person would exercise under all the pertinent circumstances. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983). The risk of injury because of the condition of the columns was foreseeable if appellants could reasonably anticipate the general character of the injury, and appellees were not required to prove that appellants could anticipate the particular occurrence. *See El Chico,* 732 S.W.2d at 313; *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 551 (Tex. 1985); *Genell, Inc. v. Flynn,* 163 Tex. 632, 358 S.W.2d 543, 547 (1962). We hold the evidence was legally and factually sufficient to show that appellants could have foreseen the risk of injury caused by the columns and that their failure to act was negligence. Points one and two are overruled.

■ In point three appellants complain the trial court erred in permitting the testimony of a witness, Thomas Wilkins, not timely identified in answer to interrogatories as one with knowledge of relevant facts. Wilkins, an architect, had been a masonry contractor and had rebuilt the column that was struck by a car in 1984. Appellees did not designate Wilkins until eleven days before trial, and the trial court first sustained appellants' motion to preclude Wilkins' testimony finding he was not timely designated. After Rachel McMahon, owner of Response, testified as an adverse witness, appellees claimed surprise by her testimony that the column Wilkins had repaired was not destroyed but merely damaged and sought to call Wilkins as a rebuttal witness. The trial court modified its earlier ruling and ordered Wilkins would

be permitted to testify, restricting his testimony to rebut the McMahon testimony which appellees claim was a surprise.

Appellants complain that there was no proof of good cause sufficient to permit Wilkins' testimony. We overrule their complaint because, assuming the trial court's ruling was error, none of his testimony was harmful to appellants, and it was they who elicited from Wilkins the only testimony which was not cumulative.

Wilkins' time on the witness stand was brief; and for the most part, repetitive of testimony the jury had already heard. On direct examination Wilkins testified he was employed to rebuild one of the Las Chaumiera's columns in January 1985. He testified the column had been completely destroyed and that he had to remove its broken pieces in order to replace it. Importantly, during direct examination, Wilkins did not testify that he knew or had been told the condition of the column after it was struck by a car.

During cross-examination Wilkins admitted he first saw the destroyed column six weeks after it was damaged and that he had no idea what condition it was in immediately after it was struck by a car.[1] It was then, in response to a question by appellants' counsel, that he first testified it was to his knowledge and he understood the column collapsed as a result of a car striking it. On redirect Wilkins testified, without objection, that Las Chaumiera's manager told him the column had been knocked down by a car.

■ Error in admitting the testimony of an undesignated witness is harmless if the testimony is cumulative of other evidence or not controlling of a material issue dispositive of the case. *See Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). Wilkins' only testimony that was not cumulative of other testimony during the trial was that indicating the manager had told him the 1984 occurrence caused the collapse of the column, and that testimony was firs⁺ elicited by appellants. Fur-

ther, whether the column struck in 1984 was completely destroyed or only buckled by the collision is not controlling on a material issue, particularly in light of the other testimony and the photographs in evidence. Point three is overruled.

■ In points four through ten appellants challenge the legal and factual sufficiency of the evidence to support various awards of future damages: $500,000 lost earnings; $200,000 medical; $50,000 physical impairment; and $250,000 physical pain and mental anguish. In considering appellants' no evidence points, we must consider only the evidence and inferences which tend to support the verdict and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). While appellants' insufficient evidence points require us to consider all the evidence relevant to each issue, we must avoid substituting our judgment for that of the jury and sustain those points only if we can state in what regard the evidence to the contrary outweighs that supporting the verdict, while clearly stating why the verdict is manifestly unjust, shocks the conscience or clearly demonstrates bias.

■ An award of future damages in a personal injury case is always speculative. Life expectancy, medical advances, and the future cost of products, services and money are not matters of certainty, thus appellate courts are particularly reluctant to disturb a jury's award of these damages. Often a jury must extrapolate an award of future damages from proof of other matters, for example, an award of future medical damages based upon a finding of past medical treatment. *See Thate v. Texas & Pacific Ry. Co.,* 595 S.W.2d 591, 601 (Tex. App.—Dallas 1980, writ dism'd).

A neurosurgeon examined Michael in the hospital emergency room shortly after his injury. Michael suffered a severe compound depressed skull fracture on the right side of his forehead. A CAT scan revealed he had depressed bone fragments and a

---

**1.** Response Property Management's on site manager later testified the column buckled from the impact of the 1984 collision, and she ordered it taken down and removed before Wilkins first saw it.

small blood clot within the frontal lobe of the brain. From the emergency room, Michael was taken to surgery where the doctor debrided brain and bone tissue. Michael's head injuries required additional surgeries.

Michael's mother described emotional problems and personality changes which she noticed in Michael after the accident. She testified that he dreamed about the accident and would wake up crying. She also testified he had become forgetful, lost concentration, suffered headaches, and was afraid of loud noises. She described how he dragged his left foot, and had problems with his right eye. There was also testimony Michael suffered weakness in his left arm as well as his left leg.

In addition to the neurosurgeon who first treated Michael, there was testimony from a psychiatrist, a neurologist, and a psychologist who had examined Michael. These experts testified there was a possibility that as a result of his injury Michael might suffer seizures in the future and that seizures could cause further brain injury. They also testified Michael would require future medical and psychological evaluation, monitoring, consultation and treatment. In addition, the psychologist testified Michael had developed problems with visual, motor, and fine motor skills as well as adaptive behavior functioning.

Appellants complain there was no direct testimony what effect Michael's injuries would have on his future income and point out the appellees did not offer the testimony of an economist or career specialist. However, in the case of a child who is too young to have earned money, a jury must determine lost earning capacity altogether from their common knowledge and sense of justice. *See McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712 (1943).

Appellants argue all of the doctors testified that Michael's prognosis looked good, and considering all of the testimony of need for future medical together, based upon the expert's' estimates of future medical costs, in dollars, the damages awarded should not exceed $37,500. However, no precise evidence is required to support an award of future medical damages, and a jury may base an award upon the nature of the injuries incurred together with the medical treatment rendered, and the injured party's condition at trial. *See Hughett v. Dwyre,* 624 S.W.2d 401, 405 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.); *Thate,* 595 S.W.2d at 601.

In complaining of the award of future physical impairment, appellants point out the jury found no past physical impairment and argue there was no evidence of future physical impairment. To recover damages for future physical impairment, one must have proof his physical impairment extends beyond any impediment to his earning capacity and beyond pain and suffering so that it produces a distinctly separate loss. *See Allen v. Whisenhunt,* 603 S.W.2d 242, 244 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ dism'd w.o.j.).

Michael was four when the accident occurred and seven at trial. As with a loss of future earning capacity in determining a child's future physical incapacity, a jury must rely upon its common knowledge and sense of justice as a substitute for any significant past history of the injured child. The testimony from Michael's mother and the experts who examined him was legally and factually sufficient evidence to support the logical conclusion that he would incur future physical impairment. The jury's award of that element in a sum equal to twenty percent of its award of pain and anguish and ten percent of its award of lost earning capacity was not excessive.

Future physical pain and mental anguish is another element which is necessarily speculative and particularly within the jury's province to resolve. *See Gulf State Utilities Co. v. Dryden,* 735 S.W.2d 263, 268 (Tex.App.—Beaumont 1987, no writ); *International Harvester Co. v. Zavala,* 623 S.W.2d 699, 708 (Tex. Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). The mere fact that the jury's award was large does not indicate passion, prejudice, sympathy, or other circumstances not in evidence. *Id.* We hold the

evidence was sufficient to sustain the finding of future pain and anguish.

In their seventh point appellants also complain the award of future medical exceeds the amount pled by appellees. Appellants moved, in their motion for judgment notwithstanding the verdict, for judgment denying Michael any recovery of future medical expenses because the jury award exceeded appellees' pleadings. Appellants waived this argument by failing to so object either in a motion for new trial or in a motion to limit the recovery to the amount pled. *See Siegler v. Williams*, 658 S.W.2d 236, 240 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Wm. S. Baker, Inc. v. Sims*, 589 S.W.2d 492, 493 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). Their motion for judgment notwithstanding the verdict did not preserve error because a complaint of excessive damages must be contained in a motion seeking new trial on the issue and not in a motion for judgment. *See* TEX.R.CIV.P. 324(b).

Points four through ten are overruled.

In point eleven appellants complain that the trial court erred in submitting a jury question on Michael's damages which allowed the jury to award seven elements separately rather than submitting the issue with the elements listed but only one answer required. Appellants argue the damage question submitted violated the requirement that jury questions be submitted in broad form whenever feasible. *See* TEX. R.CIV.P. 277.[2] Regardless of whether the trial court erred in submitting Michael's damages, appellants have failed to demonstrate or even argue how they were harmed. *See* TEX.R.APP.P. 81(b)(1). Point eleven is overruled.

In their first cross-point appellees complain the trial court erred in finding Espinoza was a settling person and allowing a credit to appellants. Appellees maintain there was no evidence to support the trial court's finding that the driver was a "settling person" under TEX.CIV.PRAC. & REM. CODE ANN. § 33.011(5) (Vernon Supp.1992). A "settling person" is defined as "a person who at the time of submission has paid or promised to pay money or anything of monetary value to a claimant at any time in consideration of potential liability pursuant to the provisions of Section 33.001 with respect to the personal injury, property damage, death, or other harm for which recovery of damages is sought." TEX.CIV. PRAC. & REM.CODE ANN. § 33.011(5) (Vernon Supp.1992).

A "no evidence" point is preserved by "(1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue or, (5) a motion for new trial specifically raising the complaint." *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985). As such, contrary to appellants' assertion, appellees properly preserved error on this point by objecting to the submission of the driver's negligence in the jury charge.

In reviewing a "no evidence" point we should consider only the evidence and inferences that support the finding and disregard any evidence and inferences to the contrary. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670 (Tex.1990). If there is any probative evidence to support the finding, the point must be overruled and the finding upheld. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

In this case, there was evidence Espinoza gave the Pattersons a "little money," perhaps $10.00, as well as toys and clothes for Michael. She also gave them a handwritten statement in Spanish which described the accident.[3] However, there was

---

2. An irony which appears to have escaped appellants' notice is that broadly submitting the question of Michael's damages would have prevented them from raising points of error four through ten, because in one answer the jury would have awarded all of the elements of Mi-

chael's damages including both past and future damages.

3. I, Ivette Real [Espinoza], on the night of August 9, 1987 was in Dalila Rios' house, apartment 3106—1001 South Center St., Arlington, Texas. I was in Dalila's house when I saw the

no evidence the Pattersons released Espinoza from any potential liability or that the money, toys and clothes were consideration paid in settlement of her potential liability. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 33.-011(5) (Vernon Supp.1992). The things from Espinoza were nothing more than an expression of her regret and concern for Michael. We sustain appellees' first cross-point.

In their second cross-point appellees complain the trial court erred in limiting the award of prejudgment interest to the accrued damages at the time of judgment. However, as appellants correctly point out, appellees failed to preserve error on this point by their failure to present the issue to the trial court. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985). In order to present a complaint concerning prejudgment interest by cross-point of error, the trial court must have been informed in order to have allowed the trial court an opportunity to provide the relief requested and correct any error. *Larrumbide v. Doctors Health Facilities*, 734 S.W.2d 685, 693 (Tex.App.—Dallas 1987, writ denied). Appellees failed to complain to the trial court of the alleged error regarding the amount of the award of prejudgment interest. Appellees' second cross-point is overruled.

The judgment of the trial court is modified to award $117,000 damages to Donald and Lily Patterson, and $1,100,000 to Michael Christopher Patterson. As modified, the judgment is affirmed, but we remand to the trial court to calculate interest and enter judgment in accordance with the modification.

lady from the apartment above, Karen Albarero, suddenly arrive. Since I was in her parking space, I went to move my car so that she could have her space. When I got into my car, I sat down, put it in gear, and backed up about a meter and then Karen told me that there wasn't any problem. Mr. Rodrigo Rios, Dalila's husband also spoke to me, probably in my mind I paused a little and probably stepped down on the accelerator and lunged into the wall. At the time, I wasn't sure what happened because my body was turned a little. I only saw that the child, Michael, was injured when Mr. Rodrigo Rios lifted the wall up. Later, Michael's father came and took the boy to the hospital.

The car belongs to my boyfriend Adrien Gallego and it is uninsured.

Ivette Real Espinoza