DURHAM TRANSPORTATION
COMPANY, INC.,
Appellant,

v.

Tina and Charles BEETTNER, Individually and as Next Friends of Michael Aaron Beettner, a Minor; Sylvia Whiddon–Cervantes, individually and as Next Friend of Samantha Whiddon, a Minor; and Elisabeth Thomas, Individually and as Next Friend of Nicole Thomas, a Minor, Appellees.

No. 10–05–00212–CV.

Court of Appeals of Texas,
Waco.

July 19, 2006.

Rehearing Overruled Aug. 22, 2006.

Oliver B. Krejs, SettlePou, Dallas, for Appellant.

Jimmie A. Franklin, Fort Worth, for Appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA Justice.

The parents of three children filed suit against Durham Transportation Company for injuries the children sustained in a school bus accident. A jury found in Appellees' favor and awarded damages. After trial, the court determined that the current prejudgment and postjudgment interest statutes are unconstitutional, retroactive laws as applied to Appellees because these statutes took effect during the pendency of Appellees' suit.

Durham contends in seven issues that:

(1) the court erred by submitting each of the Appellees' damages questions in broad form because there is no evidence to support one or more of the elements of each Appellee's damages claims;

(2) the evidence is factually insufficient to support certain elements of the Appellees' damages claims;

(3) the court erred by declaring the prejudgment and postjudgment interest statutes unconstitutional;

(4) the court erred by awarding attorney's fees because no evidence was presented to the jury on this issue and no question was submitted to the jury on the issue;

(5) the court erred by awarding attorney's fees for a declaratory relief claim which was asserted solely as a vehicle to obtain attorney's fees;

(6) the court erred by granting Appellees' no-evidence summary judgment motion on an issue on which the Appellees had the burden of proof (constitutionality of prejudgment and postjudgment interest statutes); and

(7) the court erred by awarding prejudgment interest on costs and attorney's fees.

We will affirm in part, reverse and render in part, and suggest a remittitur.

## BROAD–FORM SUBMISSION

Durham contends in its first issue that the court erred by submitting each of the

Appellees' damages questions in broad form because there is no evidence to support one or more of the elements of each Appellee's damages claims. With respect to the Beettners' and Whiddons' damages, Durham contends that there is no evidence of past or future physical impairment or lost earning capacity.[1] With respect to the Thomases' damages, Durham contends there is no evidence of past physical impairment, lost earning capacity, or future disfigurement.

■ A trial court errs by submitting a broad-form damages question which includes elements of damages for which there is no evidence. *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 226–27 (Tex.2005); *Harris County v. Smith*, 96 S.W.3d 230, 233–34 (Tex.2002). To resolve Durham's first issue then, we must determine whether, as Durham contends, there is no evidence to support the challenged damages elements. *See Romero*, 166 S.W.3d at 220–24.

When we conduct a no-evidence review, we must determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.*

The elements of damages at issue here are past and future physical impairment, future lost earning capacity, and future

disfigurement. We address each of these in turn.

■ "[P]hysical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex.2003). A broad range of limitations on physical activities have been upheld as compensable physical impairments. *See Patlyek v. Brittain*, 149 S.W.3d 781, 787 (Tex.App.-Austin 2004, pet. denied).

> Examples of injuries or limitations that have been held to be legally sufficient evidence of physical impairment include difficulty eating and communicating with others; continuing inability to sleep due to sharp pains, plus inability to run, bicycle, participate in triathlons, and play with children; past inability to walk and future difficulties in running, standing, and climbing; inability to ascend or descend stairs or kneel and difficulty in standing for long periods of time; loss of seventy-five percent of strength in left arm, which subsequently contributed to plaintiff's falling, breaking her leg, and being confined to a wheelchair; and difficulties performing yard work, car maintenance, and playing racquetball.

*Id.* (citations omitted).

■ "Lost earning capacity concerns the impairment to one's ability to work." *Clayton v. Wisener*, 190 S.W.3d 685, 697 (Tex.App.-Tyler 2005, pet. denied) (quoting *Koko Motel, Inc. v. Mayo*, 91 S.W.3d 41, 51 (Tex.App.-Amarillo 2002, pet. denied)).

---

1. The charge instructed the jury to assess Appellees' damages for "loss of earnings or earning capacity" in the future. Although lost earnings and lost earning capacity are distinct elements of damages, the arguments and authorities in the appellate briefs and the trial court's inclusion of these elements as future damages both support a conclusion that that the issue here concerns loss of earning capacity rather than loss of earnings. *Cf. Koko Motel, Inc. v. Mayo*, 91 S.W.3d 41, 51 (Tex.App.-Amarillo 2002, pet. denied) ("lost wages or earnings refers to the actual loss of income due to an inability to perform a specific job *from the time of injury to the time of trial*") (emphasis added).

This element of damages measures the extent to which a plaintiff's pre-injury capacity to work was impaired by the injury. *See Tagle v. Galvan*, 155 S.W.3d 510, 519–20 (Tex.App.-San Antonio 2004, no pet.); *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 35–36 (Tex.App.-Tyler 2003, pet. denied).

■ To support an award of damages for lost earning capacity, a plaintiff must present evidence sufficient to permit a jury "to reasonably measure earning capacity in monetary terms." *Tagle*, 155 S.W.3d at 519; *Plainview Motels*, 127 S.W.3d at 35–36. However, courts recognize that any determination of future earning capacity involves an element of uncertainty. *See McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710, 712 (1943); *Tagle*, 155 S.W.3d at 519; *Plainview Motels*, 127 S.W.3d at 35; *Koko Motel*, 91 S.W.3d at 51. Thus, juries are accorded considerable discretion in making such determinations. *Id.* Nonetheless, a jury's award of damages for lost earning capacity "must be based on something more than mere conjecture." *McIver*, 169 S.W.2d at 712; *accord Clayton*, 190 S.W.3d at 697–98; *Koko Motel*, 91 S.W.3d at 51.

■ Non-exclusive factors which may be considered in determining lost earning capacity include "evidence of past earnings; the plaintiff's stamina, efficiency, and ability to work with pain; the weaknesses and degenerative changes that will naturally result from the plaintiff's injury; and the plaintiff's work-life expectancy." *Tagle*, 155 S.W.3d at 519; *Plainview Motels*, 127 S.W.3d at 36; *accord Koko Motel*, 91 S.W.3d at 52. However, each case must be determined according to its particular facts and circumstances. *See McIver*, 169 S.W.2d at 712; *Clayton*, 190 S.W.3d at 698; *Koko Motel*, 91 S.W.3d at 51.

■ "Where plaintiff is a child, who has never earned any money, the jury must determine the value of its lost earning capacity altogether from their common knowledge and sense of justice." *McIver*, 169 S.W.2d at 712; *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 903 (Tex.App.-Texarkana 2004, pet. denied); *accord Strauss v. Continental Airlines, Inc.*, 67 S.W.3d 428, 436 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Pipgras v. Hart*, 832 S.W.2d 360, 366 (Tex.App.-Fort Worth 1992, writ denied); *C.T.W. v. B.C.G.*, 809 S.W.2d 788, 794 (Tex.App.-Beaumont 1991, no writ).

■ Disfigurement is "that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Goldman v. Torres*, 161 Tex. 437, 341 S.W.2d 154, 160 (1960); *accord Doctor v. Pardue*, 186 S.W.3d 4, 18 (Tex.App.-Houston [1st Dist.] 2005, pet. filed); *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 252 (Tex.App.-Texarkana 2005, no pet.); *Schindler Elevator Corp. v. Anderson*, 78 S.W.3d 392, 413 (Tex.App.-Houston [14th Dist.] 2001, pet. granted, judgm't vacated w.r.m.).

### Michael Beettner

■ Durham contends that the record contains no evidence that Michael Beettner suffered past or future physical impairment or lost earning capacity.

Beettner testified that the accident caused him to suffer torn fibers on the lateral side of his left kneecap. Medical records admitted in evidence support this diagnosis. Immediately after the accident, his knee "hurt bad," and he experienced pain when walking. A knee brace provided by the hospital helped with the pain by preventing him from fully extending his leg. Beettner experienced this pain and

discomfort for "about a month to a month and a half." After that, he experienced "very slight pain."

Nevertheless, Beettner was still experiencing problems with his knee at the time of trial, five and one-half years after the accident. Beettner testified that

[a]bout every month, two to three times a month it will catch, the kneecap part will catch and pop. And at first, for about five minutes, it's very painful, and then after that, it's pretty much fine, but it depends on how much the weather changes as to how much it does in the month.

Because of the knee injury, Beettner decreased his participation in athletics. Before the accident, he participated in football, baseball, basketball, and track. Afterward, he played only baseball because of the pain associated with his knee.

The jury awarded the Beettners $3,000 in damages for physical pain, mental anguish, and physical impairment suffered in the past. The jury awarded them $25,000 in damages for physical pain, mental anguish, physical impairment, and lost earning capacity which Beettner will suffer in the future.

Beettner's testimony that (1) the injury has caused him to experience pain while walking, (2) the injury has caused him to decrease his participation in athletics, and (3) his symptoms have continued constitutes evidence which "would enable reasonable and fair-minded people" to award damages for past and future physical impairment. *See Patlyek,* 149 S.W.3d at 787–88; *Plainview Motels,* 127 S.W.3d at 39; *Schindler Elevator Corp.,* 78 S.W.3d at 412.

■ With regard to lost earning capacity, Beettner contends that his testimony regarding the pain he frequently experiences while walking provided a sufficient basis for the jury to award damages for lost earning capacity. Durham counters that this constitutes "no evidence" because Beettner has not missed any work because of his injury, because the injury has not affected his grades, and because he has continued to play baseball since suffering the injury. However, these contentions go to the factual sufficiency of the evidence rather than the question of whether the Beettners produced "some evidence" of lost earning capacity.

Appellate courts have affirmed damages awarded for lost earning capacity where the plaintiff suffered a knee injury or some other injury which affected the plaintiff's ability to walk. *See, e.g., Allright, Inc. v. Van Scoyoc,* 784 S.W.2d 942, 945 (Tex. App.-Houston [14th Dist.] 1990, no writ); *Mo. Pac. R.R. Co. v. Schreck,* 774 S.W.2d 687, 689–90 (Tex.App.-Texarkana 1989, no writ); *Padget v. Gray,* 727 S.W.2d 706, 712 (Tex.App.-Amarillo 1987, no writ). The jury heard Beettner's testimony about how his knee injury affected his ability to walk. It was for the jurors to apply "their common knowledge and sense of justice" to determine the amount of damages the Beettners should be awarded for lost earning capacity. *See McIver,* 169 S.W.2d at 712; *Pipgras,* 832 S.W.2d at 366; *C.T.W.,* 809 S.W.2d at 794.

Beettner's testimony about the pain he experiences while walking is evidence which "would enable reasonable and fair-minded people" to award damages for lost earning capacity. *See Allright,* 784 S.W.2d at 945; *Mo. Pac. R.R.,* 774 S.W.2d at 689–90; *Padget,* 727 S.W.2d at 712.

### Samantha Whiddon

■ Durham contends that the record contains no evidence that Samantha Whiddon suffered past or future physical impairment or lost earning capacity.

Whiddon testified that, because of a tongue injury she suffered in the accident, her ability to speak has been impaired.[2] "[I]f I try to speak too quickly ... I have to repeat myself and people can't understand me...." Her mother likewise testified that Whiddon talks differently now and "if she talks fast, you can't understand her sometimes."

The jury awarded the Whiddons $3,000 in damages for physical pain, mental anguish, and physical impairment suffered in the past. The jury awarded them $25,000 in damages for physical pain, mental anguish, physical impairment, and lost earning capacity which Whiddon will suffer in the future.

Appellate courts have affirmed damages awarded for physical impairment where the plaintiff suffered an injury which affected the plaintiff's ability to speak or communicate. *See Ramirez v. Fifth Club, Inc.*, 144 S.W.3d 574, 592 (Tex.App.-Austin 2004), *rev'd in part on other grounds*, 196 S.W.3d 788 (Tex.2006);[3] *Roberts v. Williamson*, 52 S.W.3d 343, 350–51 (Tex.App.-Texarkana 2001), *rev'd in part on other grounds*, 111 S.W.3d 113 (Tex.2003);[4] *see*

*also SunBridge Healthcare*, 160 S.W.3d at 253 (suggesting remittitur from $497,000 to $150,000 for physical impairment award because of limited duration of impairment).

Thus, the evidence that Whiddon's ability to speak has been impaired by her tongue injury is evidence which "would enable reasonable and fair-minded people" to award damages for physical impairment. *Id.*

It goes without saying that an inability to speak or communicate clearly can impact a person's suitability for employment. Thus, appellate courts have held that damages for loss of earning capacity may be recovered where the plaintiff suffered an injury which affected the plaintiff's ability to speak or communicate. *See, e.g., Roberts*, 52 S.W.3d at 350–51; *Farley v. M.M. Cattle Co.*, 549 S.W.2d 453, 459–60 (Tex. Civ.App.-Waco 1977, writ ref'd n.r.e.).

The jury heard the testimony about how Whiddon's tongue injury affected her ability to speak. It was for the jurors to apply "their common knowledge and sense of justice" to determine the amount of dam-

---

2. Appellees also contend that the following excerpt from the reporter's record shows that Whiddon's impaired speech was demonstrated for the jury by her inability to plainly enunciate the word "Ford" during direct examination. However, the record is not clear on this issue. Whiddon testified that the accident happened near "the Cleburne Ford house." Then the following transpired:

> Counsel: The Cleburne what?
> Whiddon: Cleburne Ford house.
> Counsel: Ford?
> Whiddon: Yeah.
> Counsel: Oh, the Ford dealership.

It is unclear from this record whether Appellees' counsel's apparent confusion stemmed from a misunderstanding of the phrase Whiddon used to describe the dealership or from Whiddon's alleged "difficulty saying the word 'Ford,'" as Appellees contend in their brief. Counsel could have eliminated any confusion in this regard by asking that the record be

made to reflect that Whiddon was having difficulty saying this word, if that were the case. *See Piotrowski v. Minns*, 873 S.W.2d 368, 370 (Tex.1993) ("At every stage of the proceedings in the trial court, litigants must exercise some diligence to ensure that a record of any error will be available in the event that an appeal will be necessary.").

3. The petitioners in *Ramirez* did not challenge the jury's award of damages for physical impairment in the Supreme Court. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797–98, (Tex.2006) (affirming award of future mental anguish damages).

4. The Supreme Court in *Roberts* reversed only on the lower court's holding "that parents may recover for the loss of filial consortium" resulting from a non-fatal injury to a child. *See Roberts v. Williamson*, 111 S.W.3d 113, 114–15 (Tex.2003).

ages the Whiddons should be awarded for lost earning capacity. *See McIver,* 169 S.W.2d at 712; *Pipgras,* 832 S.W.2d at 366; *C.T.W.,* 809 S.W.2d at 794. Therefore, the testimony about Whiddon's impaired ability to speak is evidence which "would enable reasonable and fair-minded people" to award damages for lost earning capacity. *See Roberts,* 52 S.W.3d at 350–51; *Farley,* 549 S.W.2d at 459–60.

### Nicole Thomas

 Durham contends that the record contains no evidence that Nicole Thomas suffered past physical impairment, lost earning capacity, or future disfigurement.

Thomas testified that she experienced back, neck, and shoulder pain as a result of the accident. The neck and shoulder pain subsided, but the back pain has continued. Thomas testified that her back pain has worsened each year. When she sits for more than ten minutes at a time without moving, she experiences numbness and pain, which sometimes becomes "unbearable." According to an orthopedic clinic report made about a year after the accident, Thomas complained at that time that "[s]he used to play basketball, volleyball, and run track (hurdles). These now cause her pain, although she has played basketball since the accident."

 An orthopedic surgeon testified that Thomas has a "bilateral pars defect" exacerbated by spondylolisthesis in the L5 region. The surgeon could not say whether this pars defect existed before the accident, but the surgeon did opine that Thomas suffered a lower back injury in this region which caused the symptoms she is now experiencing.[5] The surgeon recommends that Thomas undergo a lumbosacral fusion to treat these symptoms.

The jury awarded the Thomases $25,000 in damages for physical pain, mental anguish, and physical impairment suffered in the past. The jury awarded them $425,000 in damages for physical pain, mental anguish, physical impairment, and lost earning capacity which Thomas will suffer in the future.

The evidence that Thomas's back injury has caused her to experience pain while participating in athletics is evidence which "would enable reasonable and fair-minded people" to award damages for past and future physical impairment. *See Plainview Motels,* 127 S.W.3d at 39; *Harris County v. Smith,* 66 S.W.3d 326, 331–32 (Tex.App.-Houston [1st Dist.] 2001), *rev'd on other grounds,* 96 S.W.3d 230 (Tex. 2002); *Molina v. Moore,* 33 S.W.3d 323, 329 (Tex.App.-Amarillo 2000, no pet.); *Lawson–Avila Constr., Inc. v. Stoutamire,* 791 S.W.2d 584, 599–600 (Tex.App.-San Antonio 1990, writ denied).

Appellate courts have affirmed damages awarded for lost earning capacity where

---

**5.** Durham contends as part of its first issue that the orthopedic surgeon's testimony is "no evidence" because it is conclusory. Although an objection must be made to challenge the reliability of an expert's testimony, no trial objection is required "[w]hen the testimony is challenged as conclusory or speculative and therefore non-probative on its face." *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 233 (Tex.2004). Expert testimony is considered "conclusory or speculative" when it has no factual substantiation in the record. *See United Servs. Auto. Ass'n v. Croft,* 175 S.W.3d 457, 463–64 (Tex.App.-Dallas 2005, no pet.); *Gabriel v. Lovewell,* 164 S.W.3d 835, 846 (Tex.App.-Texarkana 2005, no pet.). Here, the orthopedic surgeon based her opinions on her 2 physical examinations of Thomas, Thomas's reports of her symptoms and medical history, CT scans, x-rays, and Thomas's progress in physical therapy. Accordingly, we reject Durham's contention that the surgeon's testimony on its face is conclusory or speculative. *See Welch v. McLean,* 191 S.W.3d 147, 157–59 (Tex.App.-Fort Worth 2005, no pet.); *United Servs. Auto. Ass'n,* 175 S.W.3d at 464–67; *Gabriel,* 164 S.W.3d at 846.

the plaintiff suffered a back injury which continued to cause pain, numbness, and other symptoms. *See Pilgrim's Pride Corp.,* 134 S.W.3d at 904; *Strahan v. Davis,* 872 S.W.2d 828, 833 (Tex.App.-Waco 1994, writ denied); *Tri–State Motor Transit Co. v. Nicar,* 765 S.W.2d 486, 492–93 (Tex.App.-Houston [14th Dist.] 1989, no writ). The jury heard the evidence about how Whiddon's back injury has affected her. It was for the jurors to apply "their common knowledge and sense of justice" to determine the amount of damages the Thomases should be awarded for lost earning capacity. *See McIver,* 169 S.W.2d at 712; *Pipgras,* 832 S.W.2d at 366; *C.T.W.,* 809 S.W.2d at 794. Therefore, the testimony about Thomas's back injury and numbness is evidence which "would enable reasonable and fair-minded people" to award damages for lost earning capacity. *See Pilgrim's Pride Corp.,* 134 S.W.3d at 904; *Strahan,* 872 S.W.2d at 833; *Tri–State Motor Transit Co.,* 765 S.W.2d at 492–93.

Appellate courts have affirmed damages awarded for physical disfigurement where the plaintiff has suffered or will suffer scarring from surgery performed as a result of the injuries at issue. *See, e.g., Tesfa v. Stewart,* 135 S.W.3d 272, 276–77 (Tex.App.-Fort Worth 2004, pet. denied); *Wal–Mart Stores, Inc. v. Tinsley,* 998 S.W.2d 664, 673 (Tex.App.-Texarkana 1999, pet. denied); *Nw. Mall, Inc. v. Lubri–Lon Int'l, Inc.,* 681 S.W.2d 797, 804 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). Therefore, the orthopedic surgeon's testimony that Thomas will require back surgery is evidence which "would enable reasonable and fair-minded people" to award damages for future disfigurement. *Id.*

### Summary

The record contains sufficient evidence which "would enable reasonable and fair-minded people" to award damages for each of the elements Durham challenges in its first issue. Thus, the court did not err by submitting a broad-form damages question for each plaintiff. *Cf. Romero,* 166 S.W.3d at 226–27; *Smith,* 96 S.W.3d at 233–34. Accordingly, we overrule Durham's first issue.

### FACTUAL SUFFICIENCY

Durham contends in its second issue that the evidence is factually insufficient to support the jury's award of damages for each of the elements challenged in Durham's first issue and for the jury's award of past medical expenses.

██ "Under traditional factual sufficiency standards, a court determines if a finding is so against the great weight and preponderance of the evidence that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias." *In re C.H.,* 89 S.W.3d 17, 25 (Tex.2002).

### Michael Beettner

Durham contends that there is factually insufficient evidence that Beettner suffered past or future physical impairment or lost earning capacity. Durham also contends that the jury's award of $500 for past medical expenses is excessive.

██ Durham argues that the evidence is factually insufficient on the elements of past and future physical impairment and lost earning capacity because there is evidence that: (1) Beettner was having no trouble with the mechanics of his knee and no swelling or instability nine days after the accident when he had his initial visit with an orthopedic surgeon; (2) Beettner had broken nine bones before this accident and has a high tolerance for pain; (3) Beettner is not taking pain medication for his knee; (4) the knee injury did not affect his grades or his ability to play high school

baseball; and (5) the knee injury has not affected his plans to attend community college and has not caused him to miss work.

However, in light of Beettner's testimony that (1) the injury has caused him to experience pain while walking, (2) the injury has caused him to decrease his participation in athletics, and (3) his symptoms have continued, we hold that the evidence is factually sufficient to support the jury's award of damages for past and future physical impairment. *See Plainview Motels*, 127 S.W.3d at 39; *Schindler Elevator Corp.*, 78 S.W.3d at 412.

 In light of Beettner's testimony that he frequently experiences pain while walking, we hold that the evidence is factually sufficient to support the jury's award of damages for lost earning capacity. *Allright*, 784 S.W.2d at 945; *Mo. Pac. R.R.*, 774 S.W.2d at 689–90; *Padget*, 727 S.W.2d at 712; *see also Pipgras*, 832 S.W.2d at 366; *C.T.W.*, 809 S.W.2d at 794.

 Durham contends that the jury's award of $500 for past medical expenses is excessive because the only evidence admitted with regard to Beettner's medical expenses consisted of: (1) an affidavit of $195 in expenses for an orthopedic surgeon; and (2) the parties' stipulation that "there are no other past medical bills for Michael Beettner for emergency room treatment other than the two stipulated amounts of $25 and $88." [6]

Beettner also offered an affidavit from a records custodian that the billing records from his emergency room visit were "voided." Beettner argues on appeal that the jury could look to Turner's emergency room bills and infer that he would have had an ER physician charge "of about $215," which is the amount Turner was billed by her ER physician.[7] However, this argument ignores the binding effect of the parties' stipulation.

 "A stipulation is 'an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto.'" *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex.1998) (quoting *Ortega–Carter v. Am. Int'l Adjustment Co.*, 834 S.W.2d 439, 441–42 (Tex.App.-Dallas 1992, writ denied)); *Travelers Indem. Co. v. Starkey*, 157 S.W.3d 899, 903–04 (Tex. App.-Dallas 2005, pet. denied). Under Rule of Civil Procedure 11, a stipulation is enforceable if it is in writing, signed, and filed as part of the record, or made in open court and entered of record. *See* Tex.R. Civ. P. 11; *Travelers Indem. Co.*, 157 S.W.3d at 904. A stipulation is binding on the parties and the court. *See Shepherd*, 962 S.W.2d at 33; *Travelers Indem. Co.*, 157 S.W.3d at 904; *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 641 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

Beettner stipulated on the record that his only costs "for emergency room treatment" amounted to $113. He cannot now contend that the jury could look to Turner's medical records as evidence of how much he was charged by the ER physician. *Id.* Therefore, the evidence is factually insufficient to support the jury's award to the Beettners of $500 for past medical expenses. Accordingly, we will suggest a remittitur of $192. *See* Tex.R.App. P. 46.3; *Torrington Co. v. Stutzman*, 46 S.W.3d

---

**6.** The parties made this stipulation on the record in response to a note from the jury asking, "Are there ... other past medical bills for Michael Beettner for emergency room treatment?"

**7.** Beettner and Turner were treated at the same emergency room.

829, 851 (Tex.2000); *Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 72 (Tex.App.-Texarkana 2004, pet. denied).

### Samantha Whiddon

Durham contends that there is factually insufficient evidence that Whiddon suffered past or future physical impairment or lost earning capacity. Durham also contends that the jury's award of $3,000 for past medical and dental expenses is excessive.

■ Durham argues that the evidence is factually insufficient on the elements of past and future physical impairment and lost earning capacity because there is evidence that Whiddon: (1) has maintained straight-A's in school; (2) is taking night courses at a community college; (3) is on the swim team and student council; and (4) has been coordinating youth activities at her church. However, in light of the testimony from Whiddon and her mother about Whiddon's impaired ability to speak, we hold that the evidence is factually sufficient to support the jury's award of damages for past and future physical impairment. *See SunBridge Healthcare*, 160 S.W.3d at 253; *Ramirez*, 144 S.W.3d at 592; *Roberts*, 52 S.W.3d at 350–51. We likewise hold that the evidence is factually sufficient to support the jury's award of damages for lost earning capacity. *See Roberts*, 52 S.W.3d at 350–51; *Farley*, 549 S.W.2d at 459–60; *see also Pipgras*, 832 S.W.2d at 366; *C.T.W.*, 809 S.W.2d at 794.

■ Durham contends that the jury's award of $3,000 for past medical and dental expenses is excessive because the only evidence admitted with regard to Whiddon's expenses consisted of medical expense affidavits of: (1) $348 for ambulance

services; (2) $532 for emergency room services; (3) $191 for dental services (Oct. to Nov. 1998); (4) $70 for dental services (July 1999); (5) $1,379 [8] for dental services (Apr. to May 2003). Whiddon also offered in evidence two receipts totaling $11.53 for medicines. This evidence accounts for $2,531.53 in medical and dental expenses.

Nevertheless, Whiddon responds that the evidence shows that her actual expenses exceeded the $3,000 award because a dentist, Dr. Hall, testified that he bonded her two injured teeth for $70 in July 1999 and these teeth would require re-bonding every two years. However, Dr. Hall also testified that another dentist, Dr. Chuoke, re-bonded Whiddon's teeth in 2003. Dr. Chuoke's charges for this procedure are included within the $1,379 charged for dental services from April to May 2003 as indicated above. There is no evidence in the record that Whiddon's teeth were re-bonded in 2001 or on any other occasion before the January 2004 trial.

Therefore, the evidence is factually insufficient to support the jury's award to the Whiddons of $3,000 for past medical expenses. Accordingly, we will suggest a remittitur of $468.47. *See* Tex.R.App. P. 46.3; *Torrington Co.*, 46 S.W.3d at 851; *Burke*, 138 S.W.3d at 72.

### Nicole Thomas

Durham contends that there is factually insufficient evidence that Thomas suffered past physical impairment, lost earning capacity, or future disfigurement. Durham also contends that the jury's award of $10,000 for past medical expenses is excessive.

■ Durham argues that the evidence is factually insufficient on the element of

---

8. The affidavit and accompanying records for Dr. Chuoke reflect total billings of $1,415. However, the last entry on the statement is for "Prophylaxis, Adult" in the amount of $36. Apparently, this last entry was not for Whiddon's treatment.

past physical impairment and lost earning capacity because Thomas testified that she was able to play volleyball and basketball after sitting out for a year without "aggravating" her back injury or making it worse. However, in light of Thomas's testimony that her back injury has caused her to experience pain while participating in athletics, that her back pain has worsened, and that she is experiencing numbness in her leg, we hold that the evidence is factually sufficient to support the jury's award of damages for past physical impairment. *See Plainview Motels,* 127 S.W.3d at 39; *Smith,* 66 S.W.3d at 331–32; *Molina,* 33 S.W.3d at 329; *Lawson–Avila Constr.,* 791 S.W.2d at 599–600.

We likewise hold that the evidence is factually sufficient to support the jury's award of damages for lost earning capacity. *See Pilgrim's Pride Corp.,* 134 S.W.3d at 904; *Strahan,* 872 S.W.2d at 833; *Tri-State Motor Transit Co.,* 765 S.W.2d at 492–93; *see also Pipgras,* 832 S.W.2d at 366; *C.T.W.,* 809 S.W.2d at 794.

With regard to the Thomases' claim for damages for future disfigurement, Durham argues only that the evidence is factually insufficient because the orthopedic surgeon's testimony is conclusory on its face. However, we have already rejected this argument. Based on the surgeon's testimony that Thomas will require a lumbosacral fusion, we hold that the evidence is factually sufficient to support the jury's award of damages for future disfigurement. *See Wal–Mart Stores,* 998 S.W.2d at 673; *Nw. Mall,* 681 S.W.2d at 804.

Durham contends that the jury's award of $10,000 for past medical expenses

is excessive because the evidence supports an award for only $4,094. However, the documentary evidence admitted shows that the Thomases incurred the following expenses: (1) $125 for pediatrician; (2) $3,019 for orthopedic services; (3) $600 for a CT scan; (4) $348 for emergency room treatment; (5) $362 for neurologist; (6) $387 for ambulance;[9] and (7) $215 for ER physician. This evidence amounts to $5,056 in past medical expenses.

Durham does not challenge any of the listed evidence as not being part of the Thomases's reasonable and necessary medical costs. Thomas concedes that a remittitur of $4,944 is warranted. Therefore, because the evidence is factually insufficient to support the jury's award to Thomas of $10,000 for past medical expenses, we will suggest a remittitur of $4,944. *See* Tex.R.App. P. 46.3; *Torrington Co.,* 46 S.W.3d at 851; *Burke,* 138 S.W.3d at 72.

### Summary

The record contains factually sufficient evidence to support the jury's award of damages to the Beettners and the Whiddons for past and future physical impairment and for lost earning capacity. The record likewise contains factually sufficient evidence to support the jury's award of damages to the Thomases for past physical impairment, lost earning capacity, and future disfigurement.

However, the evidence is factually insufficient to support the damages awarded for past medical expenses. Therefore, we will suggest a remittitur of $192 for the Beettners' past medical expenses; we will sug-

9. The record actually contains 2 affidavits admitted as Plaintiffs' Exhibits 11 and 13 for the same $387 ambulance bill. The court also admitted 2 exhibits regarding Thomas's orthopedic care: Plaintiffs' Exhibit 4 for $2,429 in services provided from October 18, 1999 to December 13, 1999; and Plaintiffs' Exhibit 142 for $3,019 in services provided from October 18, 1999 to June 5, 2003.

gest a remittitur of $468.47 for the Whiddons' past medical expenses; and we will suggest a remittitur of $4,944 for the Thomases' past medical expenses. Accordingly, we sustain Durham's second issue in part and overrule it in part.

## ATTORNEY'S FEES

Durham contends in its fourth issue that the court abused its discretion by awarding attorney's fees to Appellees because they failed to plead and prove a claim for attorney's fees to the jury. Durham contends in its fifth issue that the court abused its discretion by awarding attorney's fees under the Uniform Declaratory Judgments Act because Appellees pursued a post-trial claim for declaratory relief solely as a basis for obtaining attorney's fees.

The Uniform Declaratory Judgments Act provides in pertinent part:

A person ... whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the ... statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a) (Vernon 1997). Thus, the constitutionality of a statute may be challenged under this Act. *See, e.g., Neeley v. W. Orange–Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746 (Tex.2005). Reasonable and necessary attorney's fees may be recovered in suits brought under this Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997).

■■■■ However, "[t]here is no basis for declaratory relief if the party seeking such relief is already seeking a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy" already being sought. *Strayhorn v. Raytheon E–Sys., Inc.*, 101 S.W.3d 558, 572 (Tex.App.-Austin 2003, pet. denied) (quoting *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex.App.-Houston [1st Dist.] 2001, pet. denied)); *accord U.S. Bank v. Prestige Ford Garland Ltd. P'ship*, 170 S.W.3d 272, 278 (Tex.App.-Dallas 2005, no pet.). Thus, it is an abuse of discretion to award attorney's fees under the Uniform Declaratory Judgments Act if the claim for declaratory relief is urged solely as a vehicle to obtain attorney's fees. *See U.S. Bank*, 170 S.W.3d at 278; *Raytheon E–Sys.*, 101 S.W.3d at 572.

■■■■ Here, Appellees urged a claim for declaratory relief to determine whether the current prejudgment and postjudgment interest statutes are retroactive laws which cannot be constitutionally applied in their case. However, Appellees' constitutional claims could have easily been raised under their prior pleadings in conjunction with their request for prejudgment and postjudgment interest and without the necessity of a separate claim for declaratory relief. *See, e.g., In re B.R.S.*, 166 S.W.3d 373, 374 (Tex.App.-Waco 2005, no pet.); *In re N.A.S.*, 100 S.W.3d 670, 671 (Tex.App.-Dallas 2003, no pet.); *Willard v. Davis*, 881 S.W.2d 907, 910 (Tex.App.-Fort Worth 1994, orig. proceeding). Therefore, we conclude that Appellees urged their claim for declaratory relief solely as a vehicle to obtain attorney's fees. *See U.S. Bank*, 170 S.W.3d at 278; *Raytheon E–Sys.*, 101 S.W.3d at 572.

■■■■ For this reason, the court abused its discretion by awarding Appellees attorney's fees under the Uniform Declaratory Judgments Act. *Id.* Attorney's fees are not recoverable in a personal injury suit premised on negligence. *See Gulf States*

*Utils. Co. v. Low,* 79 S.W.3d 561, 568 (Tex. 2002); *City of Houston v. Woods,* 138 S.W.3d 574, 582–83 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Appellees assert no other legal basis to support the trial court's award of attorney's fees.

Therefore, the court abused its discretion by awarding attorney's fees to Appellees. Accordingly, we sustain Durham's fourth and fifth issues.

## RETROACTIVE LAWS

Durham contends in its third issue that the court erred by declaring the prejudgment and postjudgment interest statutes to be unconstitutional retroactive laws as applied in Appellees' case. The trial court declared these statutes unconstitutional insofar as section 304.1045 of the Finance Code now prohibits the award of prejudgment interest on future damages and section 304.003 has been amended so that the current rate of interest for a judgment has been reduced from ten percent to five percent per annum.

In 1998 when the accident occurred, section 304.102 of the Finance Code provided, "A judgment in a wrongful death, personal injury, or property damage case must include prejudgment interest." Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, sec. 304.102, 1997 Tex. Gen. Laws 3091, 3435 (amended 1999) (current version at TEX. FIN.CODE ANN. § 304.102 (Vernon Supp. 2005)).[10] Under section 304.102 and its predecessor, courts held that prejudgment interest was recoverable on future damages. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 530 (Tex.1998); *Brookshire Grocery Co. v. Smith,* 99 S.W.3d 819, 825 (Tex.App.-Beaumont 2003, pet. denied); *Reliable Consultants, Inc. v. Jaquez,* 25 S.W.3d 336, 347 (Tex.App.-Austin 2000, pet. denied).

In 2003 however, the Legislature effectively overruled these decisions by enacting section 304.1045 of the Finance Code which provides, "Prejudgment interest may not be assessed or recovered on an award of future damages." TEX. FIN.CODE ANN. § 304.1045 (Vernon Supp.2005). Section 304.1045 applies to "any case in which a final judgment is signed or subject to appeal on or after the effective date of this Act." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 6.04, 2003 Tex. Gen. Laws 847, 862. The effective date of the statute was September 1, 2003. *Id.* § 23.02(a), 2003 Tex. Gen. Laws 847, 898. The judgment in this case was not signed until January 6, 2005.

The postjudgment interest rate in 1998 was ten percent per annum.[11] *See* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, sec. 304.003(c)(2), 1997 Tex. Gen. Laws 3091, 3435 (amended 2003) (current version at TEX. FIN.CODE ANN. § 304.003(c)(2) (Vernon Supp.2005)). The 2003 amendment to section 304.003(c) halved the applicable rate so that judgments now bear interest at the rate of five percent per annum.[12] *See* TEX. FIN.CODE

10. Section 304.102 currently provides, "A judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest." TEX. FIN.CODE ANN. § 304.102 (Vernon Supp.2005).

11. More precisely, the interest rate was 10 percent per annum if the published auction rate for treasury bills was less than 10 percent. The applicable rate would be 20 percent if the auction rate was more than 20 percent. *See* Act of May 24, 1997, 75th Leg.,

R.S., ch. 1008, § 1, sec. 304.003(c), 1997 Tex. Gen. Laws 3091, 3435 (amended 2003) (current version at TEX. FIN.CODE ANN. § 304.003(c) (Vernon Supp.2005)).

12. Another amendment to section 304.003 is that the applicable rate is now determined with reference to the "prime rate as published by the Federal Reserve Bank of New York" rather than the t-bill auction rate. *See* TEX FIN.CODE ANN. § 304.003(c). The applicable rate is 5 percent if the prime rate is less than

ANN. § 304.003(c)(2). This amendment took effect on September 1, 2003. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(a), 2003 Tex. Gen. Laws 847, 898.

■ Article I, section 16 of the Texas Constitution provides, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16. A statute violates the "retroactive law" prohibition of article I, section 16 if it "operate[s] retroactively to deprive or impair vested substantive rights acquired under existing laws, or create[s] new obligations, impose[s] new duties, or adopt[s] new disabilities in respect to transactions or considerations past." *In re J.B.W.*, 99 S.W.3d 218, 223 (Tex.App.-Fort Worth 2003, pet. denied) (quoting *In re Tex. Dep't of Protective & Regulatory Servs.*, 71 S.W.3d 446, 450 (Tex.App.-Fort Worth 2002, orig. proceeding) (per curiam));[13] *accord Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 353 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

A "vested right" implies an immediate right or entitlement—it is not an expectation or a contingency. "When the authority granting the right has the power and discretion to take that right away, it cannot be said to be a vested right." Engrained in the concept of vested rights is the idea of certainty. When a lawmaking power can declare that a right does not exist, the right is not "fixed or vested." Further, the triggering date of a vested right must be readily ascertainable. The filing of a lawsuit in order to obtain relief or pursue a remedy is generally held not to create or

destroy vested rights; the triggering event for the vesting of a right is the resolution of the controversy and the final determination—not the filing of the suit.

*Houston Indep. Sch. Dist. v. Houston Chronicle Publ'g Co.*, 798 S.W.2d 580, 589 (Tex.App.-Houston [1st Dist.] 1990, writ denied) (quoting *Ex parte Abell*, 613 S.W.2d 255, 262 (Tex.1981) (orig.proceeding)) (citing *McCain v. Yost*, 155 Tex. 174, 284 S.W.2d 898, 900 (1955)) (other citations omitted).

Here, Appellees' "right" to prejudgment and postjudgment interest was not "vested" until entry of the trial court's judgment.[14] *See id.; accord Walls v. First State Bank*, 900 S.W.2d 117, 121–22 (Tex. App.-Amarillo 1995, writ denied). Therefore, the court erred by holding that the prejudgment and postjudgment interest statutes are unconstitutional retroactive laws as applied in Appellees' case. *See Walls*, 900 S.W.2d at 121–22; *Houston Indep. Sch. Dist.*, 798 S.W.2d at 589–90. Accordingly, we sustain Durham's third issue and do not reach Durham's sixth issue concerning the summary judgment.

## PREJUDGMENT INTEREST AWARD

■ Durham contends in its seventh issue that the court erred by awarding prejudgment interest on Appellees' award of court costs and attorney's fees.

Because we have concluded that Appellees are not entitled to recover attorney's fees, they necessarily are not entitled to recover prejudgment interest for their attorney's fees.

---

5 percent or 15 percent if the prime rate is more than 15 percent. *Id.*

13. The original quotation is found in *Ex parte Abell*, 613 S.W.2d 255, 260 (Tex.1981) (orig.proceeding).

14. In fact, the jury did not even determine that Appellees were entitled to damages until after the effective date of the amendments to the prejudgment and postjudgment interest statutes.

Prejudgment interest has been defined as "additional damages for the loss of use of money due as damages during the period between the accrual of the claim and the date of judgment." *Embrey v. Royal Indem. Co.*, 986 S.W.2d 729, 732 (Tex.App.-Dallas 1999) (quoting *LaCoure v. LaCoure*, 820 S.W.2d 228, 237 (Tex.App.-El Paso 1991, writ denied)), *aff'd*, 22 S.W.3d 414 (Tex.2000); *accord Chilton Ins. Co. v. Pate & Pate Enters.*, 930 S.W.2d 877, 897 (Tex. App.-San Antonio 1996, writ denied); *Beutel v. Dallas County Flood Control Dist.*, 916 S.W.2d 685, 696 (Tex.App.-Waco 1996, writ denied). Therefore, we hold that prejudgment interest should be calculated based on the past damages awarded. Court costs should not be included in this calculation.

Accordingly, we sustain Durham's seventh issue.

## Conclusion

The record contains legally and factually sufficient evidence to support the jury's award of damages for Beettner's and Whiddon's past and future physical impairment and lost earning capacity and for Thomas's past physical impairment, lost earning capacity, and future disfigurement. Accordingly, we affirm that portion of the judgment which awards these elements of damages.

The evidence is factually insufficient with regard to the damages awarded to Appellees for past medical expenses. Therefore, we suggest a remittitur of $5,604.47 consisting of: (1) $192 for Beettner's past medical expenses; (2) $468.47 for Whiddon's past medical expenses; and (3) $4,944 for Thomas's past medical expenses. Therefore, if Appellees file a remittitur of $5,604.47 with the Clerk of this

Court within twenty-one (21) days after the date of this opinion, we will modify the trial court's judgment to award damages for past medical expenses of $7,895.53.[15]

However, if Appellees fail to make the suggested remittitur, we will reverse the judgment and remand this cause for a new trial. *See* Tex.R.App. P. 44.1(b); *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex.2001) (per curiam).

We reverse the judgment insofar as it awards Appellees' attorney's fees and render judgment that Appellees take nothing on their claim for attorney's fees.

We reverse the judgment insofar as it awards prejudgment interest and render judgment that Appellees recover prejudgment interest on their past damages but not on court costs. We reverse the judgment insofar as it awards postjudgment interest and render judgment that postjudgment interest shall accrue on the judgment at the rate of five percent per annum.

---

15. This modified award would consist of $308 for Beettner's past medical expenses, $2,531.53 for Whiddon's past medical expenses, and $5,056 for Thomas's past medical expenses.